MAURICE P. DURING, Appellant, *v.* HENRIQUE L. VALENTE, Respondent, et al., Defendants.

First Department, February 11, 1944.

*Philip Adler* of counsel (*Harry Sturtz* with him on the brief), for appellant.

*Herman W. Feder* of counsel (*Edward J. Fontana* with him on the brief; *Panger & Feder*, attorneys), for respondent.

*Monroe I. Katcher, II,* of counsel (*Elvin N. Edwards*, attorney, New York State Liquor Authority), *amicus curiae.*

TOWNLEY, J.   Plaintiff in his complaint alleges that the defendants employed and authorized him to sell certain butts of Portuguese Brandy stored in the Free Trade Zone of the Port of New York and agreed to pay plaintiff for his services as his earned commissions any and all sums which a purchaser procured by plaintiff should agree to pay over and above $250 per butt.   Plaintiff alleges that he procured a purchaser ready, willing and able to purchase on defendants' terms but that the defendants refused to carry out the sale, to the plaintiff's damage.

The defendant Valente moved to dismiss the complaint on the ground that it is insufficient in that it fails to allege that the plaintiff has a solicitor's permit as required by section 93 of the Alcoholic Beverage Control Law of the State of New York.

Subdivision 1 of section 93 of the Alcoholic Beverage Control Law provides: " Solicitor's Permit.   1. No individual shall offer for sale or solicit any order in the state for the sale of any alcoholic beverage irrespective of whether such sale is to be made within or without the state, unless such person shall have a solicitor's permit."   Section 2 of the same law provides that " the restrictions, regulations and provisions contained in this chapter are enacted by the legislature for the protection, health, welfare and safety of the people of the state."

In 1934, Congress passed an Act (U. S. Code, tit. 19, ch. 1A) authorizing the establishment and operation of Foreign Trade

Zones in or adjacent to each port of entry into the United States. As defined in the regulations issued under the Act (Regulations of Foreign-Trade Zones Board, U. S. Dept. of Commerce, § 101): " * * * A zone is an isolated, enclosed, and policed area, under the supervision of a designated board of Federal officials, operated as a public utility by a corporation, in or adjacent to a port of entry, without resident population, furnished with the necessary facilities for lading and unlading, for storing goods, and for reshipping them by land and water; an area into which goods may be brought, stored, and subjected to certain specified manipulation operations. If reshipped to foreign points the goods may leave the restricted trade zone without payment of duties and without the intervention of customs officials, except under certain conditions. Such products cannot, of course, leave the trade zone for domestic use or consumption without full compliance with existing customs laws. Goods may not be manufactured or exhibited in such an area. The area is subject equally with adjacent regions to all the laws relating to public health, vessel inspection, Postal Service, immigration, and to the supervision of Federal agencies having jurisdiction in ports of entry, including customs, to a limited extent."

The city of New York pursuant to statute (L. 1935, ch. 246) was authorized to apply to the Federal government for the privilege of establishing a zone pursuant to the provisions of the Foreign Trade Zone Act. Thereafter the local zone was duly established. It is obvious that this zone is created under the power of Congress to regulate commerce with foreign nations. This power is exclusive and plenary.

The counsel for New York State Liquor Authority argues that the provisions of the Alcoholic Beverage Control Law apply to goods within the trade zone because by the creation of the trade zone no cession of any territory was made to the Federal government. It is asserted that in the absence of any cession the land is a part of the State of New York and subject to its laws.

The fact that this trade zone is within the geographical limits of the State of New York is not controlling. This court had occasion to consider the status of goods under control of the Federal government for the purpose of re-export. in *Matter of Gulf Oil Corp.* v. *McGoldrick* (256 App. Div. 207, affd. 281 N. Y. 647, affd. with opinion 309 U. S. 414). It was there held that the mere geographical location of the goods within the State of New York did not constitute an import into the State and that the sale of such goods was not subject to local regulation or tax. This decision seems conclusive of this case.

It is urged, however, that the Twenty-first Amendment to the Federal Constitution puts Portuguese Brandy on a status different from that of crude oil. The Amendment insofar as relevant provides that: " The transportation or importation into any State, Territory, or possession of the United States *for delivery or use therein* of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." (Italics our own.)

By its terms the Amendment grants power to a State to regulate traffic in liquor only to the extent that such liquor is transported or imported for delivery or use within such State. The complaint contains no allegation from which it could be inferred that the sale involved the importation of the liquor into the State of New York within the meaning of the Amendment.

On a motion to dismiss a complaint on the ground that it does not state facts sufficient to constitute a cause of action " every intendment and fair inference is in favor of the pleading." (*Madole* v. *Gavin,* 215 App. Div. 299; *Marie* v. *Garrison,* 83 N. Y. 14, 23.) " If in any aspect upon the facts stated the plaintiff is entitled to a recovery, the motion should be denied." (*Dyer* v. *Broadway Central Bank,* 252 N. Y. 430.) The allegations herein are consistent with the sale of the brandy in foreign commerce or the mere transfer of title to goods remaining in the trade zone. In such a transaction the State statute requiring licenses and permits is inoperative as imposing an added burden upon foreign commerce which Congress has the exclusive power to regulate. (*Matter of Gulf Oil Corp.* v. *McGoldrick, supra.*)

The Alcoholic Beverage Control Law contains detailed regulations affecting all persons involved in the purchase and sale of liquor. If applicable at all it not only affects solicitors such as the plaintiff but likewise applies to the foreign owners of this brandy and others engaged in the transaction. The imposition of these complicated regulations upon foreign commerce in liquor within trade zones would not only interfere with the exclusive control of Congress over this commerce but would seriously impair, if not defeat, the purpose for which these zones were established.

The order should be reversed, with twenty dollars costs and disbursements, and the motion denied, with leave to the defendant-respondent to answer within ten days after service of order, on payment of said costs.

MARTIN, P. J., UNTERMYER, DORE and COHN, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and the motion denied, with leave to the defendant-respondent to answer within ten days after service of order, on payment of said costs.