[Civ. No. 16106. First Dist., Div. One. Mar. 8, 1955.]

PARROTT AND COMPANY et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

[Civ. No. 16112. First Dist., Div. One. Mar. 8, 1955.]

BELLOWS AND COMPANY, INC. (a Corporation), Respondent, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

[Civ. No. 16113. First Dist., Div. One. Mar. 8, 1955.]

JAS. BARCLAY AND COMPANY, LIMITED, et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

Dion R. Holm, City Attorney, and Lawrence S. Mana, Deputy City Attorney, for Appellant.

J. Albert Hutchinson, Theodore R. Meyer, Hart H. Spiegel, Brobeck, Phleger & Harrison; Edward W. Rosston, Richard E. Guggenhime and Heller, Ehrman, White & McAuliffe for Respondents.

PETERS, P. J.—These are consolidated appeals by the City and County of San Francisco from judgments in three separate actions ordering the city to refund certain personal property taxes imposed by it on certain imported liquors.

The factual backgrounds of and the law applicable to the three consolidated cases are similar. Respondents are importers from foreign countries of intoxicating liquors. On the first Monday of March, 1952, each respondent owned and possessed in warehouses in San Francisco a designated quantity of liquor, that it had imported from abroad. Admittedly, the liquor was still in the original unbroken packages in which it had been imported. Admittedly, this liquor was

held by respondents in identifiable and segregated lots separate from their other merchandise stored in the warehouses. Admittedly, on the first Monday of March, 1952, the liquor had not been disposed of by respondents by consignment or sale. At that time it was impossible to determine the ultimate disposition of any of the imports, that is, there was no way to know whether the liquor was ultimately to be sold for delivery and use in California or would be delivered or used outside of California.

The city, purporting to act pursuant to article XIII of the Constitution and sections 201 and 202 of the Revenue and Taxation Code, levied and collected an *ad valorem* personal property tax on the liquor in question. The levy was made after the city had demanded that the respondents list all personal property owned or controlled by them or in their possession on the tax date. The imported liquor was separately listed, and taxed separately from the other personal property of the taxpayers. These respondents paid that portion of the tax assessed against the imported liquor under protest, and then instituted these actions to recover that tax, claiming that the liquor was exempt from state taxation.

The trial court judge, the Honorable Albert Wollenberg, held in favor of the taxpayers and ordered the taxes refunded. He set forth the grounds of his decision in a memorandum opinion in which he stated, in part: ''The question for decision is whether or not the defendant City and County of San Francisco has the power to impose an *ad valorem* property tax on intoxicating liquors in the hands of the original importers and in the original package. An affirmative answer to this question can only be grounded on the premise that the Twenty-first Amendment to the Constitution of the United States repeals pro tanto, by implication, Article I, Section 10, Paragraph 2, of said Constitution [import-export clause], insofar as intoxicating liquors are concerned. The validity of this premise the Court is not willing to concede.''

■ After discussing several of the problems involved the court concluded: ''The Federal Government has sole, exclusive and plenary taxing power over imports and exports, with but one exception—that of reasonable inspection. . . . The Federal power to tax imports is plenary and exclusive. This has been expressed in an unbroken line of decisions over one hundred and twenty-five years . . .

''It is the decision of this Court that no state, nor any

political subdivision thereof, can assess an *ad valorem* property tax on imports in the hands of the original importer and in the original package, and that the Twenty-first Amendment to the Constitution of the United States does not exclude intoxicating liquors from this prohibition.''

We agree with these conclusions.

The problem revolves around the proper interpretation of two sections of the Constitution of the United States.

Article I, section 10, of that Constitution contains an enumeration of those powers that are prohibited to the states. Subdivision 2 of the section reads as follows:

''No State, shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: and the net produce of all duties and imposts, laid by any State on imports or exports, shall be for the use of the Treasury of the United States; and all such laws shall be subject to the revision and control of the Congress.''

The Twenty-first Amendment to the United States Constitution repealed the Eighteenth Amendment[1] and also provided in section 2: ''The transportation or importation into any State, Territory or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.''

The California Constitution, article XIII, section 1, permits *ad valorem* taxation of ''All property in the State . . . not exempt under the laws of the United States.'' (See also Rev. & Tax. Code, §§ 201, 202.)

The question presented is whether intoxicating liquor, imported into the United States from a foreign country, while still in the hands of the importer, and while such liquor is still in its original packages, unconsigned and unsold, is property ''exempt'' from taxation ''under the laws of the United States.'' It is the theory of appellant that, although such liquors are imports to which the import-export clause would normally be applicable so as to prevent state taxation, such taxation is permitted because the Twenty-first Amendment removed intoxicating liquor from the constitutional protection of the import-export clause. In other words, it is urged that, under that amendment, intoxicating liquor has been made a special article of commerce, removed from the protection of the import-export clause, and that its control, including the power to tax it, has been granted exclusively to the states.

---

[1]The Twenty-first Amendment became effective December 5, 1933.

The answer to the main question must be that foreign imported intoxicating liquor, while still in the hands of the importer and in its original packages, is an import which, under the import-export clause, has been made immune to state taxation. In other words, the Twenty-first Amendment did not repeal the import-export clause insofar as intoxicating liquors are concerned.

Before directly dealing with the proper interpretation of the Twenty-first Amendment some mention should be made of the general law interpreting the breadth and scope of the import-export clause. As early as 1827 Chief Justice Marshall, speaking for the United States Supreme Court in the case of *Brown* v. *Maryland*, 12 Wheat. (U.S.) 419 [6 L.Ed. 678], enunciated the so-called "original package" doctrine. Under that doctrine foreign imports, while still in their original packages and in the hands of the original importers, were held immune from state taxation. In 1871, in the case of *Low* v. *Austin*, 13 Wall. (U.S.) 29 [20 L.Ed. 517], the United States Supreme Court, in a case similar to those here under consideration, held that the "original package" doctrine applied to foreign imported liquor so as to render such liquor free from state taxation. The "original package" doctrine, as far as foreign imports are concerned, has been followed by the United States Supreme Court in a long line of cases. One of the most recent is *Hooven & Allison Co.* v. *Evatt*, 324 U.S. 652 [65 S.Ct. 870, 89 L.Ed. 1252], decided in 1945, and written by Chief Justice Stone. In that case the state attempted to levy an *ad valorem* tax on certain hemp imported by an Ohio manufacturer and held by him in the original packages preparatory for use in his Ohio factory. It was held that the import-export clause barred such taxation. After quoting the import-export clause the court stated (p. 656):

"These provisions were intended to confer on the national government the exclusive power to tax importations of goods into the United States. That the constitutional prohibition necessarily extends to state taxation of things imported, after their arrival here and so long as they remain imports, sufficiently appears from the language of the constitutional provision itself and its exposition by Chief Justice Marshall in *Brown* v. *Maryland, supra.* We do not understand anyone to challenge that rule in this case.

"It is obvious that if the states were left free to tax things imported after they are introduced into the country and

before they are devoted to the use for which they are imported, the purpose of the constitutional prohibition would be defeated. The fears of the framers, that importation could be subjected to the burden of unequal local taxation by the seaboard, at the expense of the interior states, would be realized, as effectively as though the states had been authorized to lay import duties."[2]

After discussing and quoting from *Brown* v. *Maryland,* *supra,* the court continued (p. 657):

"Although one Justice dissented in *Brown* v. *Maryland,* *supra,* from that day to this, this Court has held, without a dissenting voice, that things imported are imports entitled to the immunity conferred by the Constitution; that that immunity survives their arrival in this country and continues until they are sold, removed from the original package, or put to the use for which they are imported. [Citing many cases, including *Low* v. *Austin,* the liquor case cited *supra,* (13 Wall. (U.S.) 29 [20 L.Ed. 517-519]).]"

The court also discussed the difference between the power of the state to tax goods in the original packages when they are in interstate commerce and when they are foreign imports. In this connection the court stated (p. 665):

"In the one case [foreign imports] the immunity derives from the prohibition upon taxation of the imported merchandise itself. In the other [interstate commerce] the immunity is only from such local regulation by taxation, as interferes with the constitutional power of Congress to regulate the commerce, whether the taxed merchandise is in the original package or not."

Appellant does not challenge the well-settled rules of law above set forth, and concedes that, were it not for the Twenty-first Amendment, the city would be powerless to tax the liquor here involved. But it is asserted that that amendment removed intoxicating liquor from the protection of the import-export clause.

In considering this argument there are certain general observations that should be made. The Twenty-first Amendment contains no mention of taxation at all, and certainly does not provide, expressly, for the repeal of any portion of article 1, section 10, of the Constitution. If a *pro tanto* repeal took place it occurred by implication based on the theory that in their application to foreign imported liquor

---

[2]See Madison, Debates in the Federal Convention of 1787, August 28, 1787 (Hunt & Scott ed.).

338

the two sections are inconsistent. Not only are repeals by implication not favored in the law, and will not be found to exist unless the two provisions are wholly irreconcilable (see discussion 11 Cal.Jur.2d p. 351, § 39), but here, if the two provisions are laid side by side it will be discovered that no word or phrase of one is inconsistent with the other. The two sections, in their application to foreign imported liquor, are quite clearly complementary. The import-export clause permits the federal government exclusively to regulate and tax all imports from foreign lands, including liquors, as long as they remain imports, but when the importation is completed and the liquor is being transported or imported into one of the states "for use or delivery therein" the power of the state attaches. The obvious purpose of the Twenty-first Amendment was to preserve the intrastate jurisdiction of the states so as to grant constitutional protection to those states desiring to remain or to become "dry." (See LV Yale Law Journal, p. 815.) That amendment raised to constitutional dignity the right of each state to control its own liquor traffic, but there is not the slightest reason to believe that it was intended to modify the traditional federal-state relationship in connection with foreign imported liquor. (See *State of Georgia* v. *Wenger,* 94 F.Supp. 976, aff'd. 187 F.2d 285, cert. den. 342 U.S. 822 [72 S.Ct. 41, 96 L.Ed. 621].)

Moreover, the practical effect of appellant's interpretation cannot be overlooked. If the coastal states could tax or prohibit the importation of foreign liquors, it could "dry up" the interior states so far as such liquors are concerned. Moreover, a coastal state could, for example, tax Irish whiskey and not tax Scotch whiskey, and thus influence foreign commerce and the tariff structure of the nation adverse to the public interest. It was for these very reasons that the United States Constitution placed all powers relating to foreign intercourse exclusively in the hands of the federal government. (See for a few classic cases so holding, *Holmes* v. *Jennison,* 14 Pet. (U.S.) 540, 570 [10 L.Ed. 579, 618, Appx.] ; *Board of Trustees* v. *United States,* 289 U.S. 48, 56 [53 S.Ct. 509, 77 L.Ed. 1025] ; *United States* v. *Belmont,* 301 U.S. 324, 331 [57 S.Ct. 758, 81 L.Ed. 1134].) It should also be mentioned that if the coastal states could tax imported liquor and keep the tax proceeds they would be enriching themselves at the expense of the nation. The import-export clause above quoted expressly provides that the revenue from any such imposts shall be for the use of the United States treasury. Thus,

appellant's contention necessarily includes the argument that the Twenty-first Amendment repealed, *pro tanto,* this clause as well, an argument which has no basis at all.

One other general comment can be made. Although the Twenty-first Amendment has been in effect for nearly 22 years, the appellant is unable to point to any decision in the entire United States holding that a state or its agencies has the power under the amendment to levy an *ad valorem* tax on foreign imported liquor, while it is still in its original package, unconsigned and unsold, nor has appellant referred us to any statute of any city, county or state that has ever before attempted to levy such a tax. Of course, this does not prove that such a tax cannot be levied, but in view of the keen interest of local taxing authorities in finding new sources of tax revenue, if the two provisions of the Constitution are so inconsistent that the amendment repealed, *pro tanto,* the import-export clause as contended by appellant, it is somewhat surprising to find that no enterprising tax assessor has heretofore noted such inconsistency.

Appellant predicates the major portion of its argument on the case of *State Board of Equalization* v. *Young's Market,* 299 U.S. 59 [57 S.Ct. 77, 81 L.Ed. 38]. That case involved the constitutionality of a California statute imposing a license fee on importers of foreign beer. In that case the plaintiffs were domestic corporations engaged in the business of selling at wholesale in California beer imported from Missouri and Wisconsin. The tax was attacked on the ground that it violated the commerce and equal protection clauses of the federal Constitution. The court held that the license fee was valid under the Twenty-first Amendment, and stated (p. 62):

"Prior to the Twenty-first Amendment it would obviously have been unconstitutional to have imposed any fee for that privilege. The imposition would have been void, not because it resulted in discrimination, but because the fee would be a direct burden on interstate commerce; and the commerce clause confers the right to import merchandise free into any state, except as Congress may otherwise provide. . . .

"The Amendment which 'prohibited' the 'transportation or importation' of intoxicating liquors into any state 'in violation of the laws thereof' abrogated the right to import free, so far as concerns intoxicating liquors." The court went on to explain that the amendment confers the right on a state to prohibit all "importations" if it so desires, and therefore (p. 63) "the State may adopt a lesser degree of regulation

than total prohibition. . . . It might permit the manufacture and sale of beer, while prohibiting hard liquors absolutely. If it may permit the domestic manufacture of beer and exclude all made without the State, may it not, instead of absolute exclusion, subject the foreign article to a heavy importation fee?''

This case has been followed in several cases all holding that intoxicating liquor imported from one state to another for delivery or use in the second state can be subjected under the Twenty-first Amendment to various discriminating practices not otherwise permitted by the commerce clause. (See, for example, *Mahoney* v. *Joseph Triner Corp.*, 304 U.S. 401 [58 S.Ct. 952, 84 L.Ed. 1424]; *Indianapolis Brewing Co.* v. *Liquor Control Com.*, 305 U.S. 391 [59 S.Ct. 254, 83 L.Ed. 243]; *Joseph S. Finch & Co.* v. *McKittrick*, 305 U.S. 395 [59 S.Ct. 256, 83 L.Ed 246].)

There is no doubt some very general language in the Young case, and the cases following it, which, separated from the facts to which such language was intended to apply, seems to support appellant's argument. But all of these cases dealt with interstate commerce and not with foreign commerce. As was pointed out in *Hooven & Allison Co.* v. *Evatt*, 324 U. S. 652 [65 S.Ct. 870, 89 L.Ed. 1252], quoted from above, there is a vast difference between the commerce clause and the import-export clause. The commerce clause contains but a limited prohibition while the import-export clause is absolute. Moreover, in the Young case, it is apparent that the beer brought into California from Missouri and Wisconsin was brought in for the purpose of ''delivery or use'' in California, so that the case fell directly within the express language of the Twenty-first Amendment. In the instant case the liquors are still imports, not only in their original packages, but unconsigned or unsold so far as ultimate destination is concerned.

Certainly the Young case does not stand for the proposition that any state can prohibit the transportation across it of liquor intended for another state. It has been expressly held that the Twenty-first Amendment does not apply to intoxicating liquor merely passing through a state and not imported ''for delivery or use'' in such state. (*Collins* v. *Yosemite Park & C. Co.*, 304 U.S. 518 [58 S.Ct. 1009, 82 L.Ed. 1502].) In that case it was held that California had no power to tax liquor passing through the state to a national park located within the state. (See also *Carter* v. *Virginia*, 321 U.S. 131

[64 S.Ct. 464, 88 L.Ed. 605] ; *Motor Cargo, Inc.* v. *Division of Tax Appeals,* 10 N.J. 580 [92 A.2d 774].) ■ This rule of inability to tax liquor merely passing through the state applies both to foreign imported liquor and to liquor in interstate commerce. In *Von Hamm-Young Co.* v. *San Francisco,* 29 Cal.2d 798 [178 P.2d 745, 171 A.L.R. 274], the Supreme Court of California, in a thorough and well-reasoned opinion, held invalid a personal property *ad valorem* tax imposed on liquor stored in San Francisco warehouses, which liquor had been partially purchased outside California, partially inside California but outside San Francisco, and some inside San Francisco. All the liquor was intended for transportation to Hawaii. It was held that the state had no power, under the Twenty-first Amendment, to tax such liquor while it was in interstate commerce.

While it is true that the "original package" doctrine has been limited in interstate commerce cases by the doctrine that state power attaches when the goods have "come to rest" in a state (*Minnesota* v. *Blasius,* 290 U.S. 1 [54 S.Ct. 34, 78 L.Ed. 131]), that limitation has never been applied to foreign imports. (*Hooven & Allison Co.* v. *Evatt,* 324 U.S. 652 [65 S.Ct. 870, 89 L.Ed. 1252] ; for several cases directly holding that the Twenty-first Amendment did not change this rule see *During* v. *Valente,* 267 App.Div. 383 [46 N.Y.S.2d 385] ; *William Jameson & Co.* v. *Morgenthau,* 307 U.S. 171 [59 S.Ct. 804, 83 L.Ed. 1189].)

■ We conclude that foreign imported liquor physically present within the taxing district but still in its original package, unconsigned and unsold on the assessment date, and still in the hands of the original importer, is still in foreign commerce, and that no state or any of its subdivisions has power to impose a personal property *ad valorem* tax on it.

The only other contention of appellant necessary to consider is its argument that respondents are without power to maintain this action because they did not exhaust their administrative remedies by applying to the County Board of Equalization for review and adjustment of their assessment prior to bringing this action. Sections 1601 through 1615 of the Revenue and Taxation Code provide for the review of assessments by the County Board of Equalization. Undoubtedly, when applicable, such remedy must be pursued before a superior court action for refund can be maintained. Thus, in *City & County of San Francisco* v. *County of San Mateo,* 36 Cal.2d 196 [222 P.2d 860], it was held that before a

taxpayer may apply for judicial relief against an improper tax he must exhaust his remedies before the administrative body that has the initial powers to correct the error. ▆ But if the attempted assessment is a nullity, resort to the Board of Equalization is not necessary before suit is filed. In the San Mateo case, *supra,* at page 201, the court noted this exception by quoting with approval the following from *Security-First Nat. Bank* v. *County of Los Angeles,* 35 Cal.2d 319, 321 [217 P.2d 946] : " ' 'An exception is made when the attempted assessment is a nullity because the property is either tax exempt or outside the jurisdiction. . . . But resort to the board of equalization is not rendered unnecessary by the fact that, as in the present case, the error is one in the classification of property' and the tax is assailed on the ground that it is in violation of constitutional mandates." In the San Mateo case it was claimed that there had been an erroneous inclusion of exempt improvements in the tax imposed on taxable lands. In other words, the question was the proper valuation to be placed on taxable property, that is, whether there should be included in the tax on the real property the value of the improvements. But in the instant case there was no mingling of the tax exempt imports with the taxable property of the taxpayers. There was nothing for the administrative board to adjudicate. ▆ The function of a County Board of Equalization, as its name implies, is to increase or lower an assessment in order to equalize property assessments on the local rolls, and to make the assessment conform with the true value of the property. (See Rev. & Tax. Code, §§ 1605, 1608.) ▆ In the instant case evaluation or revaluation is not involved at all. Here the foreign imports were segregated from the other properties of the taxpayer, and separately assessed. The taxpayers claim, and properly so, that this total assessment was a nullity—beyond the power of the taxing officials to impose. In such a case there is no question of valuation that must be presented to the Board of Equalization for correction before judicial review may be sought. (*Parr-Richmond Industrial Corp.* v. *Boyd,* 43 Cal.2d 157, 165 [272 P.2d 16].)

The three judgments appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 7, 1955, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1955.