377 U.S. 341 (1964)
DEPARTMENT OF REVENUE
v.
JAMES B. BEAM DISTILLING CO.
No. 389.
Supreme Court of United States.
Argued March 23, 1964.
Decided June 1, 1964.
CERTIORARI TO THE COURT OF APPEALS OF KENTUCKY.
William S. Riley, Assistant Attorney General of Kentucky, argued the cause for petitioner. With him on the brief were John B. Breckinridge, Attorney General of Kentucky, Francis D. Burke and Hal O. Williams.
Millard Cox argued the cause and filed a brief for respondent.
MR. JUSTICE STEWART delivered the opinion of the Court.
This case requires consideration of the relationship between the Export-Import Clause[1] and the Twenty-first Amendment[2] of the Constitution.
*342 The respondent, a Kentucky producer of distilled spirits, is also the sole distributor in the United States of "Gilbey's Spey Royal" Scotch whisky. This whisky is produced in Scotland and is shipped via the ports of Chicago or New Orleans directly to the respondent's bonded warehouses in Kentucky. It is subsequently sold by the respondent to customers in domestic markets throughout the United States.
A Kentucky law provides:
"No person shall ship or transport or cause to be shipped or transported into the state any distilled spirits from points without the state without first obtaining a permit from the department and paying a tax of ten cents on each proof gallon contained in the shipment." KRS 243.680 (2) (a).
Under the authority of this statute the Kentucky Department of Revenue, petitioner, required the respondent to pay a tax of 10 cents on each proof gallon of whisky which it thus imported from Scotland. It is not disputed that, as stated by the Kentucky Court of Appeals, "the tax was collected while the whisky remained in unbroken packages in the hands of the original importer and prior to resale or use by the importer." The respondent filed a claim for refund of the taxes, upon the ground that their imposition violated the Export-Import Clause of the Constitution. The Kentucky Tax Commission and a Kentucky Circuit Court denied the claim, but on appeal the Kentucky Court of Appeals upheld it. 367 S. W. 2d 267. We granted certiorari to consider the *343 constitutional issue which the case presents. 375 U. S. 811.
The Kentucky Court of Appeals held that the tax in question, although an occupational or license tax in form, is a tax on imports in fact. "[T]he incidence of the tax is the act of transporting or shipping the distilled spirits under consideration into this state." 367 S. W. 2d, at 270. The court further held that the tax cannot be characterized as an inspection measure, in view of the fact that neither the statute nor the regulations implementing it provide for any actual inspection. Concluding, therefore, that the tax falls squarely within the interdiction of the Export-Import Clause, the court held that this provision of the Constitution has not been repealed, insofar as intoxicants are concerned, by the Twenty-first Amendment.[3] Accordingly, the court ruled that the respondent was entitled to a refund of the taxes it had paid. We agree with the Kentucky Court of Appeals and affirm the judgment before us.
The tax here in question is clearly of a kind prohibited by the Export-Import Clause. Brown v. Maryland, 12 Wheat. 419. As this Court stated almost a century ago in Low v. Austin, 13 Wall. 29, a case involving a California ad valorem tax on wine imported from France and stored in original cases in a San Francisco warehouse, "the goods imported do not lose their character as imports, . . . until they have passed from the control of the importer or been broken up by him from their original cases. Whilst retaining their character as imports, a tax upon them, in any shape, is within the constitutional prohibition." Id., at 34. See Hooven & Allison Co. v. Evatt, 324 U. S. 652.
*344 As we noted in Hostetter v. Idlewild Liquor Corp., ante, p. 330, "[t]his Court made clear in the early years following adoption of the Twenty-first Amendment that by virtue of its provisions a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders."[4] What is involved in the present case, however, is not the generalized authority given to Congress by the Commerce Clause, but a constitutional provision which flatly prohibits any State from imposing a tax upon imports from abroad. "We have often indicated the difference in this respect between the local taxation of imports in the original package and the like taxation of goods, either before or after their shipment in interstate commerce. In the one case the immunity derives from the prohibition upon taxation of the imported merchandise itself. In the other the immunity is only from such local regulation by taxation as interferes with the constitutional power of Congress to regulate the commerce, whether the taxed merchandise is in the original package or not." Hooven & Allison Co. v. Evatt, 324 U. S. 652, 665-666.
This Court has never so much as intimated that the Twenty-first Amendment has operated to permit what the Export-Import Clause precisely and explicitly forbids. In State Board v. Young's Market Co., 299 U. S. 59, 62, the Court said that the Twenty-first Amendment "abrogated the right to import free [from Missouri or Wisconsin, under the Commerce Clause] so far as concerns intoxicating liquors." In that case the appellee had argued in its brief that such a holding would imply an invalidation of the Export-Import Clause as well,[5] but *345 the Court's opinion was careful to note, "[t]he plaintiffs insist that to sustain the exaction of the importer's license-fee would involve a declaration that the Amendment has, in respect to liquor, freed the States from all restrictions upon the police power to be found in other provisions of the Constitution. The question for decision requires no such generalization." Id., at 64. In Gordon v. Texas, 355 U. S. 369, the Court in a brief per curiam affirmed a Texas conviction for illegal possession of 11 bottles of rum which had been imported without a permit and to which the required Texas tax stamps were not affixed. The state tax in that case had been held to be not a tax on imports.[6] It is clear that the gravamen of the offense in Gordon was the failure to obtain, or even apply for, a permit as required by state law. Such permits, in addition to other functions, serve to channelize the traffic in liquor and thus to prevent diversion of that traffic into unauthorized channels. In the present case the respondent has both applied for and obtained the requisite permit. The relief it requests is not the abrogation of that requirement, but simply a refund of the import tax.
To sustain the tax which Kentucky has imposed in this case would require nothing short of squarely holding that the Twenty-first Amendment has completely repealed the Export-Import Clause so far as intoxicants are concerned.[7] Nothing in the language of the Amendment nor *346 in its history leads to such an extraordinary conclusion. This Court has never intimated such a view, and now that the claim for the first time is squarely presented, we expressly reject it.
We have no doubt that under the Twenty-first Amendment Kentucky could not only regulate, but could completely prohibit the importation of some intoxicants, or of all intoxicants, destined for distribution, use, or consumption within its borders. There can surely be no doubt, either, of Kentucky's plenary power to regulate and control, by taxation or otherwise, the distribution, use, or consumption of intoxicants within her territory after they have been imported. All we decide today is that, because of the explicit and precise words of the Export-Import Clause of the Constitution, Kentucky may not lay this impost on these imports from abroad.
Affirmed.
MR. JUSTICE BRENNAN took no part in the disposition of this case.
MR. JUSTICE BLACK, with whom MR. JUSTICE GOLDBERG joins, dissenting.
This case, like Hostetter v. Idlewild Bon Voyage Liquor Corp., also decided today, ante, p. 324, deprives the States of a large part of the power which I think the Twenty-first Amendment gives them to regulate the liquor business by taxation or otherwise. That Amendment provides in part that "The transportation or importation into any State . . . for delivery or use therein of intoxicating *347 liquors, in violation of the laws thereof, is hereby prohibited." Kentucky requires persons transporting distilled spirits into the State from without the State to obtain a permit and pay a tax of 10 cents per gallon. This Kentucky tax as applied to liquors imported into Kentucky from another State is, since the Twenty-first Amendment, unquestionably valid against objections based on either the Commerce or Equal Protection Clauses. Such was the holding of this Court, soon after the Amendment's adoption, in State Board v. Young's Market Co., 299 U. S. 59 (1936), where the Court held that a State is free under the Twenty-first Amendment to levy a "heavy importation fee" on beer brought into the State. In that case, the beer was imported from Missouri and Wisconsin, but there is nothing in the Court's opinion to suggest that the holding would have been different if the beer had come from, say, Canada. See Indianapolis Brewing Co. v. Liquor Control Comm'n, 305 U. S. 391 (1939); Joseph S. Finch & Co. v. McKittrick, 305 U. S. 395 (1939). Yet here, because the liquors Kentucky has taxed are imports from Scotland rather than imports from another part of the United States, the Court holds that the Kentucky tax is barred because Art. I, § 10, cl. 2, of the Constitution provides that "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection Laws . . . ." I think this clause forbidding a State to tax imports from abroad no more limits a State's right to tax intoxicating liquors than does the Commerce Clause. In the first place, the Commerce Clause applies to foreign and interstate commerce alike. Further, the clause against taxing imports is general like the Commerce Clause itself. Section 2 of the Twenty-first Amendment, by contrast, is not general in its application. It was adopted with one specific object: to give the States unfettered *348 power to regulate intoxicating liquors. State Board v. Young's Market Co., supra, and our other cases expressly held the State's power not to be limited either by the Commerce Clause or by the Equal Protection Clause. Surely the Export-Import Clause is no more exalted and no more worthy to be excepted from the Twenty-first Amendment than are the Commerce and Equal Protection Clauses. It seems a trifle odd to hold that an Amendment adopted in 1933 in specific terms to meet a specific twentieth-century problem must yield to a provision written in 1787 to meet a more general, although no less important, problem. Since the Twenty-first Amendment was designed to empower the States to tax "intoxicating liquors" imported into the States, I cannot take it upon myself to say that a State can tax liquors made in this country but not those made in Scotland a distinction not suggested by the Amendment's language or its history. The Amendment, after all, does not talk about "foreign" liquors or "domestic" liquors; it simply speaks of "liquors"all liquors, whatever their origin. The purpose of the Amendment was to give States power to regulate, by taxation or otherwise, all liquors within their boundaries. To free from state taxation liquors imported from abroad is to place States at the mercy of liquor importers who want to use a State as a storage place for distribution of their imports. It deprives a State of the power the Twenty-first Amendment gives each Statethat is, plenary power to decide which liquors shall be admitted into the State for storage, sale, or distribution within the State. A State may choose to have wine only, beer only, Scotch only, bourbon only, or none of these. As the Court said in State Board v. Young's Market Co., supra, at 63, a State can "either prohibit all competing importations, or discourage importation by laying a heavy impost, or channelize desired importations. . . ." Although I was brought up to believe *349 that Scotch whisky would need a tax preference to survive in competition with Kentucky bourbon, I never understood the Constitution to require a State to give such preference. (My dissenting Brother asks me to say that this statement does not necessarily represent his views on the respective merits of Scotch and bourbon.)
As recently as 1958, this Court reviewed the Texas conviction of a man who had brought some bottles of rum into Texas from Mexico on his way to his home in North Carolina, and had refused to pay Texas alcoholic beverage taxes when asked to do so. Over objections that this tax violated both the Export-Import Clause and the Commerce Clause, this Court, in a three-line per curiam opinion, unanimously affirmed the conviction. Gordon v. Texas, 355 U. S. 369 (1958). Briefs filed by Texas in that case had argued that the tax was really one on "possession," not on "importation," but these labels cannot obscure the fact that both in Gordon and in this case the same conduct was involved: the physical importation of liquor from abroad into the State, at which point the State's interest in regulating or taxing the liquor came into play. Gordon did notjust as the Twenty-first Amendment does notdraw nice distinctions about where imported liquor comes from. Nor is there one word in the debates in Congress preceding the adoption of the Amendment to suggest that the backers of the Amendment, in seeking to give the States full and unhampered power over liquor traffic, thought liquor coming from abroad was less of a problem than domestic liquor or should be treated at all differently.
A final word concerning the Court's statement that "To sustain the tax which Kentucky has imposed in this case would require nothing short of squarely holding that the Twenty-first Amendment has completely repealed the Export-Import Clause so far as intoxicants are concerned." Ante, p. 345. This, I think, is not correct. What the *350 Twenty-first Amendment does mean, I believe, is that whenever liquor imported from anywhere outside the State, including foreign countries, is transported physically into a State, there to come to rest to be stored for sale and distribution, it then and there becomes a state problem and like all other liquors is subject to state laws of all kinds. It cannot be treated as if it were liquor passing straight through the Statealthough even then the State would have the power to impose regulations to prevent diversions or other possible evils. See Carter v. Virginia, 321 U. S. 131 (1944). Whatever may have been the virtue or the constitutional soundness of the fiction that articles imported from abroad are "imports" so long as they remain "in their original packages," see Hooven & Allison Co. v. Evatt, 324 U. S. 652 (1945), and dissent at 686-691, that doctrine was expressly attacked in the Senate debate on the Twenty-first Amendment as rendering the States "powerless to protect themselves against the importation of liquor into the States."[*] 76 Cong. Rec. 4171 (1933). The Amendment was meant to bury that obstacle to state power over liquor, and the doctrine of "original package," which the Senate consciously rejected, should not be revived after 30 years' interment, once again to be used to deprive States of power the Senate so clearly wanted them to have and the people so clearly granted them. Section 2 of the Amendment, born of long and bitter experience in the field of liquor regulation, should not be frustrated by us.
I would uphold the Kentucky tax.
NOTES
[1] "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Controul of the Congress." U. S. Const., Art. I, § 10, cl. 2.
[2] "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U. S. Const., Amend. XXI, § 2.
[3] As the Kentucky Court of Appeals noted, two other state courts have reached the same conclusion. Parrott & Co. v. San Francisco, 131 Cal. App. 2d 332, 280 P. 2d 881; State v. Board of Review, 15 Wis. 2d 330, 112 N. W. 2d 914.
[4] See State Board v. Young's Market Co., 299 U. S. 59; Brewing Co. v. Liquor Comm'n, 305 U. S. 391; Finch & Co. v. McKittrick, 305 U. S. 395.
[5] See brief for appellees, No. 22, 1936 Term, pp. 24-25.
[6] "It is apparent that the tax involved is not an import tax nor a tax upon an importation. In fact, the instant tax could not become an import tax because the importation must have been completed before the tax here levied attached." Gordon v. State, 166 Tex. Cr. R. 24, 27, 310 S. W. 2d 328, 330.
[7] Prior to the Eighteenth Amendment Congress passed the Webb-Kenyon Act and the Wilson Act, giving the States a large degree of autonomy in regulating the importation and distribution of intoxicants. Those laws are still in force. 27 U. S. C. §§ 121, 122. In De Bary v. Louisiana, 227 U. S. 108, the Court upheld under the Wilson Act a Louisiana license tax imposed on the business of selling in their original packages wines and liquors imported from abroad. There is nothing in that decision, nor in the language of either the Wilson Act or the Webb-Kenyon Act, to support the view that Congress intended by those laws to consent to state taxation upon importation of liquor.
[*] "The State of Iowa passed a prohibition law prohibiting the manufacture or sale of intoxicating liquors, except under certain specifications made. The Supreme Court in the case of Leisy v. Hardin (135 U. S. 100) held the law unconstitutional, in so far as it applied to the sale by the importer in the original package or keg. . . .

"The States therefore were powerless to protect themselves against the importation of liquor into the States." 76 Cong. Rec. 4171 (1933) (Senator Borah).