[Civ. No. 14980. Third Dist. June 4, 1976.]

JAPAN FOOD CORPORATION, Plaintiff and Respondent, v.
COUNTY OF SACRAMENTO et al., Defendants and Appellants.

**COUNSEL**

John B. Heinrich, County Counsel, and Monte L. Fuller, Deputy County Counsel, for Defendants and Appellants.

John H. Larson, County Counsel (Los Angeles), James Dexter Clark, Deputy County Counsel, William M. Siegel, County Counsel (Santa Clara), and Byron D. Athan, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Yonemura, Yasaki & Kawaichi and Joe J. Yasaki for Plaintiff and Respondent.

Crist, Crist, Griffiths, Bryant & Schulz and Frank E. Clohan as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**REGAN, J.**—This is an action for refund of personal property taxes paid by the plaintiff corporation under protest. (See Rev. & Tax. Code, § 5136 et seq.) The complaint sought a refund of taxes assessed by the defendant county for the taxable year 1972-1973 and also for refund of escaped tax assessments levied and collected by the defendant for the taxable years between 1968 and 1972. (See Rev. & Tax. Code, § 531 et seq.)[1] The theory of recovery was that the taxed goods were exempt imports under the Constitution of the United States. After a court trial, judgment was rendered in favor of the plaintiff. The defendants county and city appeal.

The facts are not in dispute and may be summarized as follows: Plaintiff Japan Food Corporation is a California corporation with its principal office and headquarters located in San Francisco, and is engaged in the business of selling specialty Asian foods throughout the United States at a wholesale or jobber level.

Plaintiff carries on its business operations from the following branch offices: San Francisco, Los Angeles, New York, Chicago, Baltimore and Houston. The San Francisco branch operates a subsidiary branch in Sacramento. The instant action concerns taxation of goods stored in the Sacramento warehouse.

---

[1] With regard to the causes of action relating to escaped assessments, the plaintiff also alleged the tax was illegally levied and assessed for the further reason that defendant county did not grant to plaintiff the business inventory exemption provided for in Revenue and Taxation Code section 219. Since the trial court ruled the goods were protected from local taxation by the import clause of the United States Constitution, the plaintiff's claim of business inventory exemption was rendered moot.

Plaintiff directly imports almost all of the foreign-produced goods which it sells. Generally, the goods imported are packaged by the foreign manufacturer (prior to shipment) in individual cans, bottles, or plastic or paper bags. The individual packages are then packed in pasteboard cartons, wooden boxes or metal containers, and marked with the required shipping information.

In recent years, most of the imported goods are shipped from the foreign country via ocean-going vessels in what are commonly referred to as sea vans or cargo containers. A sea van is generally described as a large shipping box with doors, somewhat similar in appearance to a truck trailer without wheels or running gear. The pasteboard boxes, wooden boxes, or metal containers are loaded into the sea van without being placed on pallets, banded, or otherwise packaged for shipment, and when fully loaded the doors are closed and sealed for loading aboard the cargo vessel.

Sea vans shipped to the San Francisco branch generally contain goods destined for plaintiff's branches other than San Francisco, both in and out of California. After the sea vans are unloaded from the vessel at the Oakland Cargo Container Terminal, the vans are trucked to plaintiff's San Francisco warehouse. There the vans are opened, customs inspection is made and the cartons are removed from the van and placed on pallets in plaintiff's warehouse. The goods ordered by and destined for other branches are shipped by common carrier to the appropriate branch.

The merchandise at the San Francisco branch is stored by category of goods and ease of material handling. Domestic and foreign-produced goods are found side by side in separate stacks and, in some instances, on the same pallet.

Goods are trucked weekly from the San Francisco branch to the Sacramento branch. When a truck arrives in Sacramento the cartons, boxes and containers are unloaded from the truck and placed in the warehouse on wooden pallets. The incoming merchandise, both foreign and domestic, is stacked separately on a single pallet. Domestically produced goods are not segregated from imported goods within the warehouse. Segregation is done only to keep like goods with like goods.

The Sacramento branch serves a designated area and does not directly receive any imported goods, nor does it ship goods to other branches. The customers are wholesale and retail grocers and restaurants, with very limited sales to commissaries.

On the tax lien date for the tax year set forth below, plaintiff had stored in its Sacramento warehouse imported goods in the original, unopened pasteboard cartons, wooden boxes or metal containers in which the foreign manufacturer had packaged and shipped the goods. These goods had the following assessed valuation:

| Tax Year | Assessed Valuation |
| --- | --- |
| 1968-1969 | $ 8,045.00 |
| 1969-1970 | 5,139.00 |
| 1970-1971 | 2,455.00 |
| 1971-1972 | 5,209.00 |
| 1972-1973 | 5,878.00 |

The plaintiff claimed (on the tax statement filed for each of the above years) that these goods were imports and thus exempt from local taxation. Plaintiff paid all of the assessments under protest, and then brought this action for the recovery of the taxes paid.

The court rendered judgment in favor of the plaintiff, holding that the goods in question were in fact imports on the lien date and thus were protected from local taxation by the import clause of the United States Constitution. Thus, this ruling necessarily rendered moot the plaintiff's claim that it was entitled to the inventory exemption.

■ Initially, defendants contend that the plaintiff had failed to exhaust its administrative remedy before the assessment appeals board prior to bringing suit in the superior court, and therefore the trial court erred in overruling the general demurrer to the first cause of action.[2] (See *Stenocord Corp.* v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966]; *Star-Kist Foods, Inc.* v. *Quinn* (1960) 54 Cal.2d 507, 509-511 [6 Cal.Rptr. 545, 354 P.2d 1]; *Security-First Nat. Bk.* v. *County of L.A.* (1950) 35 Cal.2d 319, 320-321 [217 P.2d 946].) ■ As a general rule, subject to certain exceptions, a taxpayer seeking relief from an erroneous assessment must exhaust available administrative remedies before resorting to the courts. (See authorities cited above.)

■ For the tax year 1972-1973, defendants assessed property tax upon plaintiff's business inventory with a total assessed value of $10,760.

---

[2]The first cause of action was for refund of taxes assessed by defendant county against plaintiff for the taxable year 1972-1973. The remaining causes of action were for refund of escaped tax assessments. The defendants used the failure to exhaust administrative remedies as the basis for a general demurrer only as to the first cause of action.

Of this amount, plaintiff claimed that $5,878 was exempt from taxation since it represented imported goods held by the plaintiff in the original packages as shipped by the exporter.

Plaintiff concededly did not apply for equalization to the local assessment appeals board. (See Rev. & Tax. Code, § 1605.) It was, and is, the plaintiff's position that it was not required to file an application for tax reduction of an assessment on its property where the assessment is a nullity as a matter of law since the property is tax exempt and no factual questions exist regarding the valuation of the property. (*Stenocord Corp. v. City etc. of San Francisco, supra,* 2 Cal.3d at p. 987; *Star-Kist Foods, Inc. v. Quinn, supra,* 54 Cal.2d at pp. 510-511.)[3]

The defendants' corollary argument that resort to the assessment appeals board was necessary because plaintiff's inventory consisted of both exempt and nonexempt goods is without merit. "The necessity of recourse to the board is properly determined by the nature of the issues in dispute, and not by whether an assessment is attacked in part or *in toto.*" (Original italics. *Star-Kist Foods, Inc. v. Quinn, supra,* 54 Cal.2d at p. 510.) The defendants further contend that prior to the hearing on the demurrer there was no agreement between the parties on valuation, and thus it was necessary for the plaintiff to exhaust its administrative remedies. The plaintiff, on the other hand, avers that there never was any dispute over valuation of the goods. The defendants retort that this is an attempt by the plaintiff to mislead this court since there was, in fact, a dispute over valuation.

The facts leading up to this seeming impasse are as follows: On March 7, 1973, the defendants demurred to the plaintiff's first cause of action on the basis that, among other things, there was no allegation it had exhausted its administrative remedy. On March 21, 1973, the trial court overruled the demurrer without comment and ordered the defendants to answer. The defendants filed an answer on March 29, 1973, in which

---

[3]In *Parrott & Co. v. City & County of S.F.* (1955) 131 Cal.App.2d 332, 342 [280 P.2d 881], the court states: "The function of a County Board of Equalization, as its name implies, is to increase or lower an assessment in order to equalize property assessments on the local rolls, and to make the assessment conform with the true value of the property. [Citation.] *In the instant case evaluation or reevaluation is not involved at all.* Here the foreign imports were segregated from the other properties of the taxpayer, and separately assessed. The taxpayers claim, and properly so, that this total assessment was a nullity—beyond the power of the taxing officials to impose. In such a case there is no question of valuation that must be presented to the Board of Equalization for correction before judicial review may be sought. [Citation.]"

they raised this issue as an affirmative defense. On April 18, 1974 (one day before commencement of the court trial), the parties agreed by stipulation to the assessed valuation of goods claimed to be exempt. Thus, this issue was never before the trial court during the trial itself.

The defendants, on this appeal, apparently are attempting to place this court in the unenviable position of belatedly having to decide a question of fact (i.e., was there ever a dispute over valuation), a task which we are ill-equipped to do. (See *Tupman* v. *Haberkern* (1929) 208 Cal. 256 [280 P. 970]; *Crofoot Lumber, Inc.* v. *Lewis* (1962) 210 Cal.App.2d 678, 681 [27 Cal.Rptr. 443]; in general, see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 570 et seq.) We are of the opinion that the defendants may not now raise the point on appeal. Prior to trial, the parties entered into a binding stipulation with regard to the matter of valuation for the tax year 1972-1973, which, in effect, was an agreement between themselves as to a matter involved in a judicial proceeding. (See 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, §§ 124-125.) The stipulation was also binding upon the court (*In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 488 [97 Cal.Rptr. 274]), and hence the court was precluded from making a ruling on the issue. Whether based on a theory of estoppel or waiver, the defendants, through their conduct in the court below, have failed to save the point for appeal. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 266 et seq.) It is therefore unnecessary to further discuss the question posed, and we turn to the merits of the case.

■ Imports are exempted from local taxation by the Constitution of the United States. (Art. I, § 10, cl. 2.) From the inception, the fundamental question faced by the courts in interpreting and applying the import clause, has been to delineate that point at which an item originally imported loses its character as an import and becomes subject to taxation. (See *Youngstown Co.* v. *Bowers* (1959) 358 U.S. 534, 539-549 [3 L.Ed.2d 490, 495-500, 79 S.Ct. 383].) Thus, when this matter was tried in the superior court and briefed and argued here on appeal, the primary thrust of the arguments revolved around the traditional "original package" doctrine. (See *Brown* v. *Maryland* (1827) 25 U.S. (12 Wheat.) 419 [6 L.Ed. 678].) For example, the defendants contended the sea van was the original package, the opening of which constituted a breaking of the bulk, thereby making the goods subject to local taxation. (See *Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48 [101 Cal.Rptr. 869, 496 P.2d 1237]; *Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909 [124 Cal.Rptr. 621].) The defendants also argued that the intent of the importer as expressed by his action

determined the taxability of imported goods and not the physical package. Hence, they maintained that the plaintiff (as the importer) had so acted upon the goods that they have been incorporated or mixed with the general mass of property in the state. Thus (so the argument goes), the goods have lost their distinctive character as imports and are subject to state taxation. (See *May & Co.* v. *New Orleans* (1900) 178 U.S. 496 [44 L.Ed. 1165, 20 S.Ct. 976]; *Singer Co.* v. *County of Kings* (1975) 46 Cal.App.3d 852, 864 [121 Cal.Rptr. 398].)

However, much (if not all) of this argument has become irrelevant in light of the opinion of the United States Supreme Court in *Michelin Tire Corporation* v. *Wages,* decided on January 14, 1976. (423 U.S. 276 [46 L.Ed.2d 495, 96 S.Ct. 535].) In general, the court in *Michelin* held that a state's assessment of a nondiscriminatory ad valorem property tax against a corporation's local inventory of imported tires maintained at its wholesale distribution warehouse was not within the prohibition of the import-export clause against imposts or duties on imports by the states.

In so holding, the court found it unnecessary to address the question whether the Georgia Supreme Court was correct that the tires had lost their status as imports. In addition, the court expressly overruled its decision in *Low* v. *Austin* (1871) 80 U.S. (13 Wall.) 29 [20 L.Ed. 517], "the leading decision of this Court holding that the States are prohibited by the Import-Export Clause from imposing a nondiscriminatory ad valorem property tax on imported goods until they lose their character as imports and become incorporated into the mass of property in the State." (423 U.S. at p. 282 [46 L.Ed.2d at p. 501].) The court has now made it abundantly clear that a nondiscriminatory ad valorem property tax is not prohibited by the import-export clause. (*Id.,* at p. 301 [46 L.Ed.2d at p. 512].)

The facts in *Michelin* are very similar to the facts in the instant case and do not bear repeating here. In our opinion, the decision in *Michelin* is determinative of the central issue, i.e., the taxability of the goods imported by plaintiff. It appears that the tax in question is a nondiscriminatory ad valorem property tax which does not single out imports as such, and therefore is not prohibited by the import-export clause of the United States Constitution. It follows that the trial court erred in holding the goods were protected from local taxation by this clause.[4] Hence, the

---

[4]It is only fair to note that the trial court did not have the benefit of the decision in *Michelin* when it made its ruling. Nor, of course, did counsel. Thus, the arguments of counsel on both sides have no bearing on the resolution of the main question before us. They have lost their significance in view of the high court's ruling. (Cf. *Craig Corp.* v. *County of Los Angeles, supra,* 51 Cal.App.3d at p. 916.)

goods were not exempt imports, the tax was properly levied, and the refund was improperly allowed. Accordingly, the judgment must be reversed.[5]

One issue remains to be resolved. Assuming that the goods claimed to be exempt were subject to taxation (as we have decided), then plaintiff urges it should be entitled to the business inventory exemption provided for in section 219 of the Revenue and Taxation Code. Defendants, on the other hand, argue a taxpayer is not entitled to the business inventory exemption where failure to report accurately caused the property not to be assessed, i.e., the property escaped assessment. As previously noted, the trial court never reached this question (plaintiff's claim of business inventory exemption) since it erroneously ruled the goods were protected from local taxation by the import-export clause. (See fn. 1.)

There appears to be a factual dispute between the parties as to the section of the Revenue and Taxation Code under which the subject property was assessed. (See e.g., Rev. & Tax. Code, §§ 531.1, 531.3, 531.4 and 531.5.) It is uncontroverted that escaped assessments were made. However, the record is not clear as to the actual section under which defendants made the escaped assessments. Since the trial court never took evidence on this particular point and, in fact, never met the issue, there may be other matters which need to be resolved before the precise question can be decided. We conclude that this issue (the business inventory exemption) should first be resolved by the trial court.

The judgment is reversed. The trial court is directed to enter judgment in favor of the defendants with respect to the taxability of the imported goods. On the issue of the business inventory exemption, the case is remanded to the superior court for further proceedings consistent with the views expressed herein. Each party shall bear its own costs on appeal.

Puglia, P. J., and Paras, J., concurred.

---

[5]We think it is clear that *Michelin* should receive retroactive application under the circumstances of this case. (*Ralston Purina Co.* v. *County of Los Angeles* (1976) 56 Cal.App.3d 547 [128 Cal.Rptr. 556]; *Michelin Tire Corp.* v. *County of San Mateo* (1976) 57 Cal.App.3d 332 [127 Cal.Rptr. 791].)