[L. A. No. 14613. In Bank.—July 20, 1936.]

FOX-WOODSUM LUMBER COMPANY (a Corporation), Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Appellants.

Freston & Files, Ralph E. Lewis, Louis Ferrari, Edmund Nelson, O'Melveny, Tuller & Myers and Louis W. Myers for Appellants.

G. C. De Garmo and W. M. Crane for Respondent.

Mott, Vallee & Grant, Paul Vallee and Thomas D. Mott, as *Amici Curiae* on Behalf of Respondent.

WASTE, C. J.—A hearing was granted in this cause after decision in the District Court of Appeal, Second Appellate District, Division Two, not because of any dissatisfaction with the conclusion there announced but because we were unable to subscribe to all of the reasons advanced in support thereof. The circumstances giving rise to the litigation are adequately stated in the opinion of that court and we therefore adopt its recitation of the facts as follows:

"This is an appeal from a judgment in favor of the plaintiff in an action brought in two counts, the first for rescission, and the second for money had and received. The defendant bank is and was a national bank acting as the trustee under an express trust, the *corpus* of which consisted of a note and a trust deed executed by the Arcady Apartment Hotel Company, which lien was junior to a $1,325,000 bond issue on the hotel property. In its capacity as trustee, and on order of Arcady the bank between the years 1925 and 1929 executed and delivered so-called participation certificates evidencing fractional interests in the basic note. The certificates so executed and delivered aggregated on their face approximately one-half million dollars.

"The circumstances under which the bank executed the participation certificates were as follows: The Arcady owned real property situated on Wilshire boulevard in Los Angeles and desired to finance the construction of a twelve-story apartment hotel thereon. It first executed a deed of trust constituting a first lien on the property to secure a bond issue of $1,325,000. This was in the nature of a construction loan and its validity is not in dispute, its existence as a first lien being the only point of importance. More money was necessary to complete the erection and equipment of the proposed hotel. To meet this situation Arcady negotiated with and obtained from each of the contractors and material men concerned with the erection of the building an agreement to accept in part payment of their compensation (usually 20 per cent thereof) a second lien upon the property subject to the bond encumbrance. To effectuate this arrangement Arcady executed to the order of L. L. Adams its promissory note in the sum of $600,000 and secured said note by a second trust deed upon the property and expressly stated that it was junior to the trust deed securing the bond issue. This note and trust deed was transferred to the bank. The bank thereupon executed a declaration of trust, which was approved by Arcady and which recited that the bank held the said note and trust deed in trust for the purpose of issuing participation certificates thereon, each of which would represent an interest in the basic note, the proportionate interest being disclosed on the face of the respective certificates. Originally all certificates were issued only to creditors of Arcady and they were all issued pursuant to contracts entered into before the particular certificates were issued. These contracts were all made with parties who were in a position to furnish labor, services or materials in the construction of the hotel. The certificates were in this manner issued only to creditors of Arcady and the creditors were persons who had agreed to accept the certificates before they became creditors. Certain of the creditors, including the plaintiff's assignor, after receiving the certificates disposed of them to third persons who had no original connection with the transaction. These assignees surrendered their original certificates to the bank for cancellation and received new certificates in their own names. The hotel building was completed as agreed and was put into use. Early in 1931

the plaintiff discovered for the first time that no permit had been issued for the certificates held by it and served notice of rescission upon the bank and brought this action. It was stipulated by the parties and the trial court found it to be a fact that the bank had at all times acted in the utmost good faith and merely in the position of trustee under such express trust and as registrar of the certificates. It did not receive and did not handle any money or funds or other property at all in connection with the issuance of said certificates and at no time received or was paid anything other than the usual and reasonable compensation for its services in acting as trustee or registrar.

"The basis for this action is the fact that no permit was obtained from the commissioner of corporations for the issuance or sale of these participation certificates. It was specifically found by the trial court that prior to the issuance of the certificates, representatives of the Arcady, the bank and other interested parties discussed with the commissioner of corporations the question of the necessity of obtaining such a permit and were informed by such officer that no permit was required. The court also found that the bank did not at the time of the issuance of any such certificates make any express representations whatsoever with regard to the validity, genuineness or value of the certificates. The court likewise found that the trust indenture contained an express statement that the bank as trustee assumed no responsibility as to the validity of the trust or the participation certificates issued thereunder. The trial court concluded, however, that the bank by participating in the transaction, did, *as a matter of law,* represent and warrant that each of the certificates was valid, legal and genuine. The court also concluded that a permit from the corporation commissioner was necessary to their validity and as none had been obtained they were void, and gave judgment against the bank for the face value of the certificates.

"The complaint alleges that the certificates were void in consequence of the lack of a permit from the commissioner of corporations. It is obvious from reading the complaint and also from a perusal of the record that there is no causal connection whatever between the failure to obtain a permit from the commissioner of corporations and whatever loss was suffered by the plaintiff. The actual cause of the loss

to the plaintiff was entirely extraneous to the lack of a permit, such as shrinkage in value of the mortgaged property incident to the depression rendering a second lien of little value. If a permit had been obtained the shrinkage and loss would have occurred in precisely the same manner and to the same extent that it did occur, and the presence of the permit would not have obviated the loss. Under the allegations of the complaint then, the complaint states a cause of action if it was necessary to obtain a permit from the commissioner of corporations for the issuance of the certificates; if it was not necessary to obtain such permit, the complaint fails to state a cause of action.

"It is the contention of the defendant on this appeal that as a national banking association it was not required to obtain a permit under the terms of the law as it existed at the time in question; that the certificates were not in any event offered and sold to the public within the purview of the act; that the bank had never received any money or other thing of value from any person to whom certificates were issued or from the plaintiff and hence could not be held on the basis of money had and received; that since the bank never received anything of value whatsoever, the bank cannot be held liable to the plaintiff in money in an action for rescission, and that an action for rescission will not lie against a defendant who was never a party to the contract sought to be rescinded; that the bank cannot be held liable on any theory of fraud in the face of the finding that the bank had used the utmost good faith throughout and had in the trust indenture itself made no warranties or representations whatsoever concerning the validity of the certificates; that the plaintiff was not one of those who could raise the question of the constitutionality of the subsection exempting national banks as it was not one of the class of corporations discriminated against.

"It is contended by the plaintiff, however, that national banks acting in their proprietary capacity as trustees were subject to the Corporate Securities Act during the period involved even though the statute purportedly excepted them from its operation; that if, during the period involved, the Corporate Securities Act exempted national banks acting as trustees from its operation but applied to state banks and trust companies so acting, an unconstitutional discrimination resulted which left both groups subject to the statute; that

the form of the complaint permits money judgments against the defendant as one of the participants in the violation of the Corporate Securities Act; that all who participate in a violation of the Corporate Securities Act, regardless of their receipt of any benefit, are joint tort-feasors and liable to reimburse the purchaser of the void security; that the good faith of the defendant is no defense, and that the provisions of the trust declaration cannot exempt the defendant from liability; and that the securities involved required a permit for their lawful issuance and sale, and, likewise, for their reissuance; that an offering to the public of the securities was not required and that the defendant sold the securities within the statutory definition of sale."

■ At all times material to the disposition of this cause section 2 of the Corporate Securities Act read in part as follows: " . . . The following words have in this act the signification attached to them in this section, unless otherwise apparent from the context: . . .

"3. The word 'company' includes all domestic and foreign private corporations, associations, joint stock companies, and partnerships, of every kind, trustees, as hereinafter defined, and also individuals as hereinafter defined; *excepting therefrom*:

"(a) All national banking associations and other corporations organized and existing under and by virtue of the acts of the congress of the United States; . . .

"(c) All corporations now or hereafter organized under the laws of this state for the purpose of conducting the business of banking within this state and all corporations transacting insurance business within this state, when such corporations are issuing securities of their own issue against their own assets."

The final clause of subsection c, which excepts or exempts from the operation of the act banking corporations organized under the laws of this state only when issuing their own securities against their own assets, and thus expressly subjecting such banking corporations to the provisions of the act when issuing other securities, was added in 1923. Thus, it was in 1923 that for the first time banking corporations of any kind were brought within the purview of and subjected to the provisions of the Corporate Securities Act, and then

only when organized within this state and issuing securities other than their own.

Subsection (a) of subdivision 3 of section 2, which excepts and exempts national banks from the operation of the act, remained the same from the enactment of the act in 1917 to 1929, in which latter year it was amended so as to subject national banks to the provisions of the act when issuing securities in a representative or trustee capacity. The certificates here involved antedated the 1929 amendment and it therefore plays no part in the determination of this cause.

We recently had occasion to trace the legislative history of subdivision 3 of section 2 of the act in the case of *Young* v. *Three for One Oil Royalties,* 1 Cal. (2d) 639, 645, 646 [36 Pac. (2d) 1065]. In answer to a contention therein made that the 1929 amendment was intended merely to clarify any ambiguity in the act, we declared that "The Corporate Securities Act as first adopted [1917] excepted both state and national banks from its provisions requiring corporations before issuing certificates to secure a permit from the corporation commissioner. In 1923 . . . the legislature amended said act so as to except state banks from the terms of said act only 'when such corporations are issuing securities of their own issue against their own assets'. . . . The terms of the act in so far as they applied to national banks were left as originally enacted. In 1929, however, the act was amended as above indicated. Had the legislature by these amendments intended simply to clarify the provisions of the act relative to state and national banks, it seems most reasonable to suppose that it would have in 1923, when it amended the act as it affected state banks, also made the same amendment of the act as it affected national banks. The same uncertainty or ambiguity, if any such existed, was present in each provision of the act affecting the two classes of banks. . . . Evidently the legislature had some other purpose than merely clarifying the provision of the act relating to state banks by its amendment in 1923. It evidently intended to place upon state banks a requirement not theretofore imposed upon them by the Corporate Securities Act. So when the legislature in 1929 placed practically the same restriction upon national banks that it had previously imposed upon state banks, we think the conclusion is irresistible that it was done with the same intent as that which actuated it in

amending the act in 1923 relative to state banks. In each case there was in our opinion an essential change in the terms of the act as it applied respectively to these two classes of corporations. . . . We are, therefore, of the opinion that the amendment of the Corporate Securities Act in 1929 in the respect above indicated was not for the purpose of interpreting it, but to change the meaning of the act. . . . "

Nothing advanced in the briefs herein, or in the several other cases now pending before us and involving section 2 of the act, persuades us to recede from our holding in the Young case, *supra*. We remain of the opinion that at the times of the issuance of the certificates here involved and until 1929, national banks, such as the defendant, were expressly and completely excepted from the operation of those provisions of the act having to do with the procuring of a permit as a condition precedent to the valid issuance of securities. It was not necessary, therefore, for the appellant to have obtained a permit in order to issue the certificates here involved and the same are not void.

■ The fact that between 1923 and 1929 state banks were by the terms of the act purportedly subject to its provisions when issuing securities other than their own, does not require a shifting of that burden to national banks with a resultant holding that during this same period they were also subject to the act, in spite of the express exception then granted to them. In so concluding we have in mind section 15 of article XII of the Constitution which declares that "No corporation organized outside the limits of this state shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state." We entertain no doubt that a national bank is a corporation "organized outside the limits of this state", within the meaning of this provision. But, in our opinion, this constitutional provision is addressed primarily to the legislature and is intended to prohibit the enactment of laws giving to corporations organized outside of this state the right to do business on more favorable terms than state corporations. It was apparently the intent of the framers of the Constitution that section 15 of article XII was to be a prohibition against the legislature and not, in effect, self-executing, for as originally introduced the provision required the legisla-

ture to enact laws to enforce its terms. However, this latter provision was eliminated solely because it was repetitious and made unnecessary by the general provision to the same effect contained in section 24 of the same article. (3 California Constitutional Convention 1217.) ■ That the constitutional debates may be considered as an aid in finding the intent of the instrument, is well settled. (*Older* v. *Superior Court*, 157 Cal. 770, 776 [109 Pac. 478]; *Story* v. *Richardson*, 186 Cal. 162, 165 [198 Pac. 1057, 18 A. L. R. 750].)

However, as indicated above, the fact that a burden is placed upon state corporations from which corporations organized outside the state are expressly and completely exempt, as was the situation here between 1923 and 1929, does not operate to bring such corporations organized elsewhere within the provisions of the statute intended to apply solely to corporations organized here. (*Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26, 39–41 [192 Pac. 1021, 12 A. L. R. 1190]; *Uihlein* v. *Caplice Com. Co.*, 39 Mont. 327 [102 Pac. 564, 567, 568].) In the case last cited it was held that a constitutional provision to the effect that no corporation organized outside the state shall have or be allowed to exercise or enjoy any greater rights or privileges than those possessed or enjoyed by corporations organized in Montana, which is substantially similar to our section 15 of article XII, ''was intended to prohibit the passage of laws giving to foreign corporations the right to exercise or enjoy any greater privileges than those possessed or enjoyed by domestic corporations'', but that ''the mere fact that a burden is placed upon domestic corporations from which foreign corporations are exempt does not operate to bring foreign corporations within the provisions of a law intended to apply solely to domestic corporations''.

■ It may not properly be argued in this cause that our conclusion results in an unreasonable, arbitrary and invalid discrimination against state banking corporations for the period 1923 to 1929 because of their purported statutory subjection to the provisions of the act during that time. A charge of unconstitutional discrimination can only be raised in a case where the issue is involved in the determination of the action, and then only by the person or a member of the class of persons discriminated against. (*People* v. *Globe G. & M. Co.*, 211 Cal. 121, 127, 128 [294 Pac. 3]; *Pacific Indemnity*

*Co.* v. *Myers,* 211 Cal. 635, 644, [296 Pac. 1084].) No member of the class assertedly discriminated against appears as a party in this cause. In our opinion, the exception, generally stated, that when no member of the injured class is in position to complain the question may be raised by anyone whose interests are affected, is without application here. However, in the case of *Miller* v. *Union Bank & Trust Co.,* L. A. No. 15295 (*post,* p. 31 [59 Pac. (2d) 1024]), this day decided, wherein the point is directly involved, we hold that the discrimination resulting against state banks between 1923 and 1929 as a result of the 1923 amendment of subsection c of subdivision 3 of section 2 of the Corporate Securities Act served to invalidate said amendment, thus leaving state banks as well as national banks free from its provisions during the designated period. As already indicated, this improper discrimination and resulting constitutional objection were removed in 1929 when by appropriate legislation national as well as state banks were made subject to the provisions of the act when issuing securities other than their own.

Our conclusion makes it unnecessary to here consider · other contentions of the parties. From what has been said, it follows that it was not necessary for the defendant bank to have obtained a permit in order to issue the certificates here involved, and said certificates are not, therefore, void. The second cause of action is merely a repetition of the cause of action set forth in the first count and since it is essential to plaintiff's recovery that the certificates be void, the judgment in its favor is improper.

Judgment reversed.

Curtis, J., Shenk, J., Seawell, J., and Thompson, J., concurred.