[L. A. No. 15295. In Bank.—July 20, 1936.]

CHARLES A. MILLER, Appellant, v. UNION BANK AND TRUST COMPANY (a Corporation) et al., Respondents.

C. A. A. McGee, McGee & Robnett, John J. Wilson and Robert Lee Collins for Appellant.

Mott, Vallee & Grant, Paul Vallee, Thomas D. Mott and Chase, Barnes & Chase, as *Amici Curiae* on Behalf of Appellant.

Loeb, Walker & Loeb, Herman F. Selvin and Leon H. Levi for Respondents.

O'Melveny, Tuller & Myers, Louis W. Myers, Freston & Files, Ralph E. Lewis, Louis Ferrari, Edmund Nelson,

Swanwick, Donnelly & Proudfit, Finlayson, Bennett & Morrow and James S. Bennett, as *Amici Curiae* on Behalf of Respondents.

WASTE, C. J.—Plaintiff appeals from a judgment for defendants, entered upon the sustaining of a demurrer to the complaint without leave to amend. The complaint alleges, in substance, that on January 5, 1926, the defendant bank, a California corporation, issued a certain declaration of trust known as the "Whittier Triangle Syndicate" involving a tract of real estate in Los Angeles County as the trust *res;* that the declaration of trust was issued for the purpose of selling assignments of beneficial interests to the public; that on May 14, 1929, the bank issued and sold to the plaintiff a 60/200ths interest in the net proceeds arising out of the trust; that at no time did the defendant bank have a permit from the commissioner of corporations to issue or sell the same; and that the assignment of the beneficial interest was therefore void to the plaintiff's damage in the amount of the purchase price.

In the case of *Fox-Woodsum Lumber Co.* v. *Bank of America Nat. T. & S. Assn.,* L. A. No. 14613 (*ante,* p. 14 [59 Pac. (2d) 1019]), this day decided, we held that in view of the express exception therein contained in their favor, national banks during the period 1923–1929 were not subject to the provisions of the Corporate Securities Act. However, as pointed out in the opinion in that case, state banks as a result of the 1923 amendment of subdivision 3c of section 2 of the act (Stats. 1923, p. 87) were until 1929 alone subject to its operative provisions. It was not until the latter year that national banks were brought within the purview of the act. This being so, the question here for determination is whether the cited 1923 amendment of the act, in force at the time of the issuance of the participating interest here involved, is free from constitutional objection in so far as it required state banks to procure a permit before issuing securities other than their own, when the provisions of the act then excepted national banks from the necessity of obtaining a permit for such purpose.

In sustaining the demurrer without leave to amend, the trial court gave to this question a negative answer. With its conclusion we are in complete agreement. In light of

our holding in the Fox-Woodsum Lumber Company case, *supra*, we are of the view that in so far as the 1923 amendment of subdivision 3c of section 2 of the act attempted to place a burden on state banks, which because of other provisions of the act could not then be imposed upon national banks, the amendment ran afoul of section 15 of article XII of the Constitution for as a direct result thereof national banks as an inducement to the organizers of trusts in which beneficial interests were to be sold were in a position, not available to state banks, to offer unrestricted freedom from the provisions of the Corporate Securities Act, including the lack of any requirement for a permit. The only conceivable purpose of the 1929 amendment of the section, by which national banks were brought within the act, was to destroy this obvious inequality and to place both national and state banks, in this particular, on an equal footing. Nor can it be said that this inequality was required by a paramount authority, thus obviating any necessity for uniformity, for the necessary power to regulate national banks in the particular here involved existed at all times material to this action. (12 U. S. C. A. 248(k) ; *First National Bank* v. *Missouri*, 263 U. S. 640, 656 [44 Sup. Ct. 213, 68 L. Ed. 486] ; *McClellan* v. *Chipman*, 164 U. S. 347, 357 [17 Sup. Ct. 85, 41 L. Ed. 461].)

█ In addition to running counter to the cited provision of our state Constitution, we are of the opinion that the 1923 amendment does violence to article XIV of the federal Constitution in that it denies to state banks equal protection of the laws. █ Briefly stated, this latter provision requires that, subject to reasonable classification based upon differences fairly related to the purpose of the legislation, all persons similarly situated must be treated equally by a state. However, as stated, any such classification must be based upon reasonable differences between the included and excluded classes which have a rational connection with the subject-matter of the particular statute in question. (*Connolly* v. *Union S. Pipe Co.*, 184 U. S. 540, 560, 561 [22 Sup. Ct. 431, 46 L. Ed. 679] ; *Truax* v. *Corrigan*, 257 U. S. 312, 333 [42 Sup. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375].) In *Colgate* v. *Harvey*, 296 U. S. 404 [56 Sup. Ct. 252, 256, 80 L. Ed. 299, 102 A. L. R. 54], it is said that ''mere difference is not enough'' and that ''the classification, in

order to avoid the constitutional prohibition, must be founded upon pertinent and real differences, as distinguished from irrevelant and artificial ones''.

In other words, the fact that some differences exist between the included and excluded classes does not warrant different legislative treatment in respect of matters upon which no distinction between them can be found. This is illustrated by the decisions in *Muller* v. *Oregon*, 208 U. S. 412, 422 [28 Sup. Ct. 324, 52 L. Ed. 551, 13 Ann. Cas. 957], and *Adkins* v. *Children's Hospital*, 261 U. S. 525, 552–556 [43 Sup. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238], from which it appears that though women may be a proper subject of classification for certain legislation they may not be so classified for all legislative purposes.

Notwithstanding the existence of certain differences between domestic and foreign corporations, it was held in *Southern Ry. Co.* v. *Greene*, 216 U. S. 400, 417 [30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247], to be an improper discrimination and violative of the equal protection of the law's provision of the Constitution to impose upon foreign corporations for the privilege of doing business a tax much higher than that imposed upon domestic corporations for the same purpose.

The principle is also recognized in *Smith* v. *Cahoon*, 283 U. S. 553, 566, 567 [51 Sup. Ct. 582, 75 L. Ed. 1264], wherein a statute which required automobile transportation companies to post a bond or policy of insurance, excepting therefrom carriers of farm and fish products, was held to deny equal protection of the laws in that any differences between the included and excluded companies bore no rational relation to the purpose of the statute, which purpose was to furnish some assurance of the carrier's financial responsibility to persons injured through the operation of its vehicles. In this particular, the court concluded there was no difference between ordinary carriers and those transporting agricultural products and that the attempted classification was, therefore, arbitrary.

This latter case is closely analogous to the present case in that the manifest purpose of requiring a permit from the commissioner of corporations is to afford the public some protection against the sale of illegal or unsound securities. However, in line with the holding in the case just cited,

we are of the view that any differences that may otherwise exist between state and national banks have no rational connection with or bearing on this fundamental purpose. Therefore, while certain differences between these two types of banks may constitutionally form the basis of some legislative classification between them such differences will not serve to justify the attempted discrimination here involved. State and national banks act in precisely the same manner and in the same capacity when issuing beneficial trust certificates. The necessity of protecting the public in the purchase of trust certificates or securities issued by them is just as great when a national bank is trustee as when a state bank is so acting. Any differences that exist between the two types of banks have no connection whatever with their relative fitness to sell and issue certificates or securities. Such differences cannot, therefore, be made the basis of a constitutional classification in respect of matters which they do not touch or affect.

Generally stated, the rule is that when discrimination or unconstitutionality results from a statutory amendment, as is the case here, it is the amendment which is invalid and not the original portions of the statute. (*Frost* v. *Corporation Commission*, 278 U. S. 515, 525, 526 [49 Sup. Ct. 235, 73 L. Ed. 483].) Therefore, the effect of our decision in this case and in the Fox-Woodsum Lumber Company case, *supra*, is to create an equality for the period 1923 to 1929 between state and national banks in so far as the pertinent provisions of the Corporate Securities Act are concerned. In other words, during the designated period neither state nor national banks were required to procure a permit from the commissioner of corporations for the issuance of certificates or securities of any kind or character. Our conclusion will not result in the flooding of the state with worthless securities issued by banks, for the very good reason that the years 1923 to 1929 are now behind us and, as stated above, the legislature in the latter year made both state and national banks subject to the act when issuing securities other than their own. The demurrer to the complaint was properly sustained without leave to amend.

Judgment affirmed.

Curtis, J., Shenk, J., Seawell, J., and Thompson, J., concurred.