Opinion
 

 KANE, J.
 

 —Plaintiff Ernest B. Schettler, doing business as Golden Gate Company (hereinafter appellant) appeals from the judgment dismissing the action pursuant to the order of the trial court granting respondent’s motion for summary judgment.
 
 [1]
 
 The pertinent facts are included in an agreed statement and may be summarized as follows.
 

 The instant lawsuit was brought to recover ad valorem property taxes imposed on imported inventory owned by appellant on March 1, 1972. On that date the goods were in the possession of appellant as the original importer, were held for resale and kept unopened in their original package. As the law was interpreted at that time, such goods were immune from local taxation (U.S. Const., art. I, § 10, cl. 2;
 
 Brown
 
 v.
 
 Maryland
 
 (1827) 25 U.S. (12 Wheat.) 419 [6 L.Ed. 678];
 
 Low
 
 v.
 
 Austin
 
 (1871) 80 U.S. (13 Wall.) 29 [20 L.Ed. 517];
 
 Simon
 
 v.
 
 County of Los Angeles
 
 (1956) 141 Cal.App.2d 74 [296 P.2d 381];
 
 Sterling Liquor Distributors, Inc.
 
 v.
 
 County of Orange
 
 (1970) 3 Cal.App.3d 510 [83 Cal.Rptr. 571].) In accordance therewith, appellant was advised by respondent that the imported goods were immune from local taxation so long as they retained their character as imports. In fact, appellant filed a claim for immunity for imported goods for 1972, which was granted by the Santa Clara County Assessor.
 

 On January 14, 1976, the United States Supreme Court overruled
 
 Low
 
 v.
 
 Austin, supra,
 
 by holding that the import clause of the federal Constitution does not bar the states from imposing nondiscriminatory ad valorem property taxes on imported goods
 
 (Michelin Tire Corp.
 
 v.
 
 Wages
 
 (1976) 423 U.S. 276 [46 L.Ed.2d 495, 96 S.Ct. 535]). The court reasoned that importers should pay their fair share of local governmental services such as police and fire protection and the cost of such services should be passed on to the ultimate consumers. In the wake of the
 
 Michelin
 
 decision, the California State Board of Equalization issued a directive to
 
 *996
 
 all county assessors directing that they levy escaped assessments for all prior years still open under the statute of limitations covering the period from 1972 through 1975. In compliance with the directive, respondent levied escape assessments on appellant for each of the years not barred by the statute of limitations. In the case before us, however, only the escaped assessment for 1972 is disputed.
 

 The parties stipulated that both appellant and respondent believed that the import immunity was available in 1972 and appellant was so advised by the county; that the prices of the goods were determined by appellant in reliance on the tax immunity; that the goods were sold at such lower prices prior to the decision of Michelin; and, finally, that had appellant known that the goods in question would be subjected to ad valorem property taxation, he would have added the increased cost of taxes to the prices of the goods in order to pass the cost of taxation to the ultimate consumers.
 

 After
 
 Michelin
 
 was decided and the directive of the State Board of Equalization issued, the California Legislature became concerned about the economic impact which the retroactive application of
 
 Michelin
 
 would have on the business community and the labor market of California. In order to avert any undue hardship flowing from the retroactive application of
 
 Michelin,
 
 Assembly Bill No. 3061 containing Revenue and Taxation Code
 
 [2]
 
 section 226 was passed by the Legislature and signed into law on July 3, 1976. Section 226, in effect, provides that the validity of the ad valorem property tax assessments on imported goods must be determined pursuant to the law as it existed prior to
 
 Michelin.
 
 Nonetheless, the trial court granted respondent’s motion for summary judgment and denied recovery to appellant on the stated ground that section 226, which mandates the prospective application of
 
 Michelin
 
 is unconstitutional.
 

 Although the parties and amici raise numerous issues in their extensive briefs, the fundamental and all decisive dispute on appeal is whether
 
 Michelin
 
 should be given retroactive effect so as to cover escaped assessments or whether the import tax immunity abolished by
 
 Michelin
 
 ought to be applied prospectively only.
 

 Before answering this crucial question, we initially note that the retroactivity or prospectivity of
 
 Michelin
 
 need not be decided on general
 
 *997
 
 principles governing the prospective or retroactive application of judicial decisions
 
 (Chevron Oil Co.
 
 v.
 
 Huson
 
 (1971) 404 U.S. 97, 106-107 [30 L.Ed.2d 296, 305-306, 92 S.Ct. 349];
 
 In re Marriage of Brown
 
 (1976) 15 Cal.3d 838, 850 [126 Cal.Rptr. 633, 544 P.2d 561];
 
 Ralston Purina Co.
 
 v.
 
 County of Los Angeles
 
 (1976) 56 Cal.App.3d 547, 559 [128 Cal.Rptr. 556]). As we have just pointed out, the prospective application of
 
 Michelin
 
 has been determined by a legislative enactment in California. Therefore, the narrow issues awaiting determination in the cáse at bench are (1) whether the Legislature was authorized to provide for the prospective application of
 
 Michelin,
 
 and (2) whether section 226 passes constitutional muster.
 

 In analyzing these vital issues, we first remark that under well recognized general principles, a decision of a court of supreme jurisdiction overruling a former decision is deemed to be retrospective in its operation on the assumption that the overruled decision merely misstated the applicable rules and in effect never was the law
 
 (County of Los Angeles
 
 v.
 
 Faus
 
 (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680];
 
 In re McNeer
 
 (1959) 173 Cal.App.2d 530, 533 [343 P.2d 304].) In most jurisdictions, however, courts have established exceptions to the general rule of retroactivity to protect those who acted in reliance on the overruled decision. (2) Thus, the Supreme Court of the United States has held that the federal Constitution does not compel retroactive application of overruling decisions and a state may make a choice for itself between the principles of forward operation and that of relation back on the grounds of equity and fairness
 
 (Gr. Northern Ry.
 
 v.
 
 Sunburst Co.
 
 (1932) 287 U.S. 358 [77 L.Ed. 360, 53 S.Ct. 145, 85 A.L.R. 254]). State courts have generally found state Constitutions equally permissive and have frequently stated that the determination of whether to apply an overruling decision retroactively or prospectively turns on considerations of fairness and public policy
 
 (Arizona State Tax Commission
 
 v.
 
 Ensign
 
 (1953) 75 Ariz. 376 [257 P.2d 392];
 
 State
 
 v.
 
 O’Neil
 
 (1910) 147 Iowa 513 [126 N.W. 454, 455];
 
 People
 
 v.
 
 Graves
 
 (1934) 242 App.Div. 128 [273 N.Y.S. 582, 587]).
 

 In consonance with these principles, the California Constitution permits an appellate court to restrict an overruling decision prospective application if fairness and equity are served thereby, even though the prospective application of the decision temporarily preserves a mistaken interpretation of the law
 
 (Forster Shipbldg. Co.
 
 v.
 
 County of L. A.
 
 (1960) 54 Cal.2d 450, 459 [6 Cal.Rptr. 24, 353 P.2d 736];
 
 County of Los Angeles
 
 v.
 
 Faus, supra,
 
 48 Cal.2d 672, 681). Even more to the point, the
 
 *998
 
 California case law underlines that the Legislature, as well as the court, is competent to define the retroactive scope of an overruling decision
 
 (County of Los Angeles
 
 v.
 
 Superior Court
 
 (1965) 62 Cal.2d 839, 845 [44 Cal.Rptr. 796, 402 P.2d 868]). As the court put it in
 
 Forster Shipbldg. Co.
 
 v.
 
 County of L. A., supra,
 
 at page 459:
 
 “Such temporary application
 
 of the rule
 
 of an overruled case may be prescribed by appropriate legislation as well
 
 as by judicial decision,
 
 for the Legislature is no less competent than the court to evaluate the hardships involved and decide whether considerations of fairness and public policy warrant the granting of relief.
 
 ” (Italics added; accord:
 
 Atlantic Richfield Co.
 
 v.
 
 County of Los Angeles
 
 (1977) 68 Cal.App.3d 105, 115 [137 Cal.Rptr. 84]).
 

 In the instant case, the Legislature not only provided for the prospective application of
 
 Michelin
 
 but also set out in detail the policy reasons served and promoted by such future application. Thus the Legislature found that importers had relied upon statutory and case law which was in effect prior to Michelin; that they could not reasonably foresee the change of law; that the decision in
 
 Michelin,
 
 if applied retroactively, would cause many importers to become insolvent, relocate or go out of business; and that the decline of the import business would result in a further deterioration of the labor market in California. Based upon the foregoing considerations the Legislature declared that the retroactive application of
 
 Michelin
 
 would be manifestly unfair, would cause severe economic hardship, inequities and injustices and would run counter to public policy.
 
 [3]
 

 
 *999
 
 In sum, under well settled law the Legislature, as well as the courts, is empowered to provide for a prospective or retrospective application of an overruling judicial decision predicated upon principles of equity and public policy. In the case at bench, the California Legislature availed itself of its legal power, and in furtherance of justice, fairness, and public policy determined that
 
 Michelin
 
 may not be applied to any assessments prior to the 1976-1977 assessment year. The cases uniformly hold that the courts should give due weight and deference to legislative judgment; and where, as here, the findings of the Legislature have a reasonable basis, the question of what constitutes a legitimate public purpose or public policy is largely one for the Legislature which may not be second-guessed, much less disturbed by the reviewing court
 
 (The Housing Authority
 
 v.
 
 Dockweiler
 
 (1939) 14 Cal.2d 437, 449-450 [94 P.2d 794];
 
 Veterans’ Welfare Board
 
 v.
 
 Jordan
 
 (1922) 189 Cal. 124, 145 [208 P. 284, 22 A.L.R. 1515]). It follows that section 226, which provides that
 
 Michelin
 
 must be applied prospectively, is determinative of the central issue raised on appeal if the statute is not subject to challenge on constitutional or other grounds.
 

 This leads us to the second prong of respondent’s attack claiming that section 226 is unconstitutional because it (1) is vague and uncertain and/or creates an unreasonable classification, and (2) violates the constitutional prohibition against making a gift of public funds. In addition, it is contended that section 226 is irrelevant to the determination of the case because (3) the retroactive application of
 
 Michelin
 
 has already been settled by case law; (4) the escape assessment at issue was levied pursuant to section 531.1 rather than section 226; and (5) that the California Constitution permits the ad valorem taxation of imports. Respondent’s contentions must be rejected for the following reasons.
 

 Section 226, as enacted by Statutes 1976, chapter 335, and amended by Statutes 1976, chapter 1060, provides that “The validity of any ad valorem property tax assessment on imported goods, heretofore or hereafter imposed, levied or collected with respect to tax years prior to the 1976-77 tax year, shall be determined pursuant to statutory and case law in effect prior to the decision in Michelin v. Wages, (1976), 46 L.Ed.2d 495,
 
 except that for any assessment made prior to January 14, 1976, the court may, if the circumstances warrant and the taxing authority demonstrates that it would be equitable to do so, follow the decision in Michelin v. Wages.”
 
 (Amend, italicized.)
 

 Respondent first argues that the cited section is unconstitutionally vague because it is rather doubtful what the statutory and case law was
 
 *1000
 
 prior to
 
 Michelin.
 
 Respondent insists that the rule laid down in
 
 Low
 
 v.
 
 Austin, supra,
 
 80 U.S. 29, prohibiting the imposition of ad valorem property tax on imported items while remaining in the original package was in fact changed in 1959 by
 
 Youngstown Co.
 
 v.
 
 Bowers
 
 (1959) 358 U.S. 534 [3 L.Ed.2d 490, 79 S.Ct. 383], and also that the California law was in a state of flux and unclear since the decision in
 
 Volkswagen Pacific, Inc.
 
 v.
 
 City of Los Angeles
 
 (1972). 7 Cal.3d 48 [101 Cal.Rptr. 869, 496 P.2d 1237], Respondent’s position is unacceptable for a number of reasons.
 

 One, Youngstown stands only for the proposition that where the purpose of importation is the
 
 use
 
 of the goods by the importer in his own manufacturing process, the goods lose their character as imports when they are committed to the manufacturing process for which they were imported
 
 (Youngstown Co.
 
 v.
 
 Bowers, supra,
 
 at pp. 542-543 [3 L.Ed.2d at pp. 496-497]). However, when the purpose of the importation is
 
 sale,
 
 as in the instant case, goods stored in a warehouse in their original package are immune from local taxation until they are exposed for sale or sold
 
 (Hooven & Allison Co.
 
 v.
 
 Evatt
 
 (1945) 324 U.S. 652, 657 [89 L.Ed. 1252, 1259, 65 S.Ct. 870];
 
 Singer Co.
 
 v.
 
 County of Kings
 
 (1975) 46 Cal.App.3d 852, 863 [121 Cal.Rptr. 398];
 
 Sterling Liquor Distributors, Inc.
 
 v.
 
 County of Orange, supra,
 
 3 Cal.App.3d 510, 512-513).
 

 Two, in a decision rendered five years after
 
 Youngstown,
 
 the United States Supreme Court reaffirmed the rule laid down in
 
 Low
 
 by reiterating that the goods imported do not lose their character as imports until they have passed from the control of the importer or have been broken up by him from their original containers, and that so long as they retain their character as imports, the tax on imported goods, in any shape, is within the constitutional prohibition
 
 (Dept. of Revenue
 
 v.
 
 James Beam Co.
 
 (1964) 377 U.S. 341, 343 [12 L.Ed.2d 362, 364, 84 S.Ct. 1247]).
 

 Three, the
 
 Volkswagen
 
 case upon which respondent primarily relies, did not change the original package doctrine in California either. To begin with,
 
 Volkswagen
 
 restates the general rule that immunity of imports from local taxes survives the arrival of the imported items in this country and continues until they are sold, removed from the original package or put to the use for which they are imported
 
 (Volkswagen Pacific, Inc.
 
 v.
 
 City of Los Angeles, supra,
 
 7 Cal.3d 48, 55). Moreover,
 
 Volkswagen
 
 emphasizes that even the removal of imported items from a sea van does not ipso facto terminate the tax immunity granted by the import-export clause of the federal Constitution. Rather, such immunity depends on whether the removal of the imported merchandise was with
 
 *1001
 
 the intent and effect to act as wholesalers in the mass of the property in the country
 
 (Brown
 
 v.
 
 Maryland, supra,
 
 25 U.S. 419, 441 [6 L.Ed. 678, 686]) which, in turn, may be determined only upon the facts of the individual case
 
 (Volkswagen Pacific, Inc.
 
 v.
 
 City of Los Angeles, supra,
 
 at pp. 55-56). Based upon the facts of the instant case, the county assessor found that the items imported by appellant were exempt from ad valorem property tax for the taxable year in question.
 
 [4]
 

 Four, after a thorough analysis and review of
 
 Volkswagen,
 
 the State Board of Equalization, in a 1975 report to the Legislature, concluded that for property tax purposes the “ ‘original package doctrine’ ” is still applicable to property imported for sale, and that “the California Supreme Court decision in the case of
 
 Volkswagen Pacific, Inc.
 
 v.
 
 City of Los Angeles,
 
 7 Cal.3d 48 (1972), should not be considered to have changed the law concerning the constitutional immunity from ad valorem property taxation of imports arriving in California in sea-van containers or otherwise.” (Report of the State Board of Equalization to the Legislature Regarding the Immunity from Property Taxation of Imported Goods Arriving in Sea-vans (Jan. 1975) p. 19.)
 

 The foregoing reasons compel the conclusion that prior to the decision in
 
 Michelin,
 
 statutory and case law was clearly defined and understood both on federal and state levels. Consequently, respondent’s claim that the statutory language referring to the previous law is uncertain or vague, has no legal foundation and must be rejected.
 

 Respondent’s assertion that the amendment to section 226 creates an unreasonable classification because it grants discretion to the court to apply
 
 Michelin
 
 retroactively if the escaped assessment was made prior to January 14,' 1976, while the prospective application of
 
 Michelin
 
 is rendered mandatoiy if the assessment was made after such date, is likewise meritless for a variety of reasons.
 

 
 *1002
 
 First of all, in the case at bench the assessment in dispute was made after January 14, 1976, the effective date of
 
 Michelin,
 
 and as a consequence the constitutionality of the amendment to section 226 is not properly before us.
 

 Secondly, a short analysis of the challenged provisions discloses that the classification of the statute is not unreasonable at all. As emphasized before, the retrospective or prospective application of an overruling decision turns on considerations of public policy and fairness. It is obvious that in deciding whether fairness requires retroactivity or prospectivity, the party’s reasonable reliance on the previous law is a crucial factor. If the party is put on notice of his potential tax liability (as in the case when an assessment is made prior to the overriding decision) he is accorded an opportunity to take into account the potential increase of tax cost in setting the price of the merchandise. Under these circumstances the retroactive application of the new law does not offend either the principle of fairness or reasonable reliance. By contrast, if the assessment is made after the rendition'of the new law, the party has not been put on notice of his potential tax liability; and therefore he has been deprived of the opportunity to protect himself against the increased tax burden by spreading the cost to the consumer or otherwise. In this latter situation, fairness requires that the overruling decision take effect prospectively only lest the party’s reasonable reliance on the previous law be defeated.
 

 Thirdly, even if assumed arguendo that the classification created by the amendment is unreasonable, it does not affect the constitutionality of the section as a whole. It is axiomatic that when, as here, the discrimination results from a statutory amendment, it is the amendment which is invalid, not the original portion of the statute
 
 (Miller
 
 v.
 
 Union Bank & Trust Co.
 
 (1936) 7 Cal.2d 31, 36 [59 P.2d 1024];
 
 Skyline
 
 Materials,
 
 Inc.
 
 v.
 
 City of Belmont
 
 (1961) 198 Cal.App.2d 449, 459 [18 Cal.Rptr. 95]). Indeed, the severability of the unconstitutional provisions is explicitly provided in the statute which states that “If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.” (Stats. 1976, ch. 1060, § 16.)
 

 Respondent’s more serious claim is that section 226 is invalid on the ground that it violates the constitutional prohibition against making a
 
 *1003
 
 gift of public funds (Cal. Const., art. XVI, § 6).
 
 [5]
 
 In effect, respondent argues that since the escaped assessment at issue became fixed and fell due on March 1, 1976, the lien date (§ 2902;
 
 T. M. Cobb Co.
 
 v.
 
 County of Los Angeles
 
 (1976) 16 Cal.3d 606, 611 [128 Cal.Rptr. 655, 547 P.2d 431]), the Legislature was not empowered to remit or surrender the tax so fixed by section 226, which did not become effective until July 3, 1976
 
 (Estate of Skinker
 
 (1956) 47 Cal.2d 290, 296 [303 P.2d 745, 62 A.L.R.2d 1137];
 
 Estate of Stanford
 
 (1899) 126 Cal. 112, 118 [54 P. 259, 58 P. 462]).
 

 Of course, we have no quarrel with respondent’s argument that the tax lien is a vested right of the taxing body; that the tax lien for taxes attaches on the first day of March preceding the fiscal year for which the taxes are levied (§ 2192;
 
 Doctors General Hospital
 
 v.
 
 County of Santa Clara
 
 (1961) 188 Cal.App.2d 280, 284 [10 Cal.Rptr. 423]); and that as a general proposition the Legislature cannot by a subsequent act increase or decrease the rate, remit the tax or in any way surrender, impair or limit rights that have become fixed and vested
 
 (Estate of Skinker, supra).
 
 To this general rule, however, there is a well recognized exception. It has been consistently held that expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning of the constitutional prohibition if those funds are expended for a public purpose
 
 (California Emp. etc. Com.
 
 v.
 
 Payne
 
 (1947) 31 Cal.2d 210, 216 [187 P.2d 702];
 
 County of San Bernardino
 
 v.
 
 Way
 
 (1941) 18 Cal.2d 647, 653 [117 P.2d 354];
 
 County of Alameda
 
 v.
 
 Janssen
 
 (1940) 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141];
 
 County of Riverside
 
 v.
 
 Whitlock
 
 (1972) 22 Cal.App.3d 863, 877 [99 Cal.Rptr. 710];
 
 Winkelman
 
 v.
 
 City of Tiburon
 
 (1973) 32 Cal.App.3d 834, 844-846 [108 Cal.Rptr. 415]). As stated in
 
 City of Oakland
 
 v.
 
 Garrison
 
 (1924) 194 Cal. 298, 302 [228 P. 433]: “[W]here the question arises as to whether or not a proposed application of public funds is to be deemed a gift within the meaning of that term as used in the constitution,
 
 the primary andfundamental subject of inquiry is as to whether the money is to be used for a public or a private purpose. If it is for a public purpose
 
 within the jurisdiction of the appropriating board or body,
 
 it is not,
 
 generally speaking, to be
 
 regarded as a gift.”
 
 (Italics added. Accord:
 
 Doctors General Hospital
 
 v.
 
 County of Santa Clara, supra,
 
 188 Cal.App.2d at p. 286.) It is likewise settled that if a public purpose is served by the expenditure of public funds, the constitutional prohibition is not violated even though there may be incidental benefits to private persons
 
 (Board of Supervisors
 
 v.
 
 Dolan
 
 
 *1004
 
 (1975) 45 Cal.App.3d 237, 243 [119 Cal.Rptr. 347]; see also:
 
 People
 
 v.
 
 City of Long Beach
 
 (1959) 51 Cal.2d 875 [338 P.2d 177];
 
 County of San Diego
 
 v.
 
 Hammond
 
 (1936) 6 Cal.2d 709 [59 P.2d 478, 105 A.L.R. 1155];
 
 City of Oakland
 
 v.
 
 Williams
 
 (1929) 206 Cal. 315 [247 P. 328]). Even more importantly, under an unbroken line of cases the determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis
 
 (County of Alameda
 
 v.
 
 Carleson
 
 (1971) 5 Cal.3d 730, 746 [97 Cal.Rptr. 385, 488 P.2d 953];
 
 County of Alameda
 
 v.
 
 Janssen, supra,
 
 16 Cal.2d 276, 281;
 
 The Housing Authority
 
 v.
 
 Dockweiler, supra,
 
 14 Cal.2d at pp. 449-450;
 
 Veterans’ Welfare Board
 
 v.
 
 Jordan, supra,
 
 189 Cal. 124, 145;
 
 Community Television of So. Cal.
 
 v.
 
 County of Los Angeles
 
 (1975) 44 Cal.App.3d 990, 997 [119 Cal.Rptr. 276];
 
 Board of Supervisors
 
 v.
 
 Dolan, supra,
 
 45 Cal.App.3d 237, 243).
 

 As noted earlier, in the instant case the Legislature expressly found on the one hand that public policy would be served by the enactment providing relief from retroactive legislation and on the other that the potential retroactive application of
 
 Michelin
 
 would be manifestly unfair, inequitable and unjust and would cause severe economic hardship. In support of the latter finding the Legislature pointed out that importers had reasonably relied on the previous law and could not reasonably foresee the change of law; that as a result of the unexpected tax burden many importers would become insolvent and be driven out of business; finally and even more importantly, that the adverse effect of retroactive taxes on the importing business community would result in a further deterioration of the California labor market.
 

 That the prevention of undue hardship on employers and the correlative deterioration of the employment situation may constitute a valid public purpose which duly exempts the legislation from the constitutional prohibition against donation of public funds is well illustrated by
 
 California Emp. etc. Com.
 
 v.
 
 Payne, supra,
 
 31 Cal.2d 210. In
 
 Payne,
 
 the plaintiff was attempting to collect unemployment contributions from defendant employer. Defendant, believing he had less than the minimum number of employees, had not filed returns. The applicable statute of limitations was suspended if no returns were filed. However, six months prior to the filing of the action by the plaintiff, the statute of limitations was changed to provide that it was tolled only if the failure to file returns was intentional. Although moneys were due and owing and debt had accrued, the court determined that the legislative
 
 *1005
 
 intent was to provide relief for employers and it upheld the statute against an attack that it constituted a gift of public funds. The court stated, inter alia, as follows: “The question remains whether the retroactive application of the amended statute would conflict with the constitutional prohibition against gifts of public money or property to private persons. (Cal. Const., art. IV, §§ 22, 31.) It has been held that a retroactive amendment to the inheritance tax laws releasing the tax liability of an estate was within the constitutional inhibition. [Citations.]
 

 “It is well settled, however, that expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning of sections 22 and 31 of article IV of the Constitution if those funds are expended for a public purpose, which is a matter primarily for legislative discretion. [Citation.] It would appear that
 
 any incidental benefit to the employer
 
 in applying this section to existing causes of action so as to cut off the commission’s right to sue for the contributions where no intent to evade the act is present,
 
 may well be outweighed by the public benefit
 
 which would result if enforcement officers spent their time on fresh claims rather than stale ones. An additional element of public benefit is present where, as here, the statutory scheme is not purely a revenue measure but is enacted as part of a broad social program involving continuing contributions and benefits.
 
 Whether the employer would be able to pay a large assessment, based upon many years of innocent delinquencies, becomes important. It is possible that an employer who has not made collections from his employees or set aside a fund for the payment of the assessments, would be rendered insolvent or bankrupt if compelled to pay the amount of the accumulated assessments,
 
 plus interest and penalties.
 
 Under such circumstances, the result would be to force the employer out of business, thereby depriving his employees of work and, to that extent, defeating the
 
 primary
 
 object
 
 of the legislation which is
 
 to protect employees against
 
 unemployment.”
 
 (California Emp. etc. Com.
 
 v.
 
 Payne, supra,
 
 at pp. 216-217; italics added.)
 

 Based upon
 
 Payne
 
 and the long line of cases cited above, we -must conclude that the Legislature supplied sufficient reasons in support of its conclusion that by the prospective application of
 
 Michelin
 
 a valid and well recognized public purpose is served, and also that this determination of the Legislature does have the requisite reasonable basis. Under these circumstances, section 226 squarely falls within the exception to the general rule prohibiting donation of public funds and its constitutional
 
 *1006
 
 validity must be upheld even though as an incidental matter the importers as private individuals also benefit from its provisions.
 

 The remaining issues raised by respondent do not require extended discussion. The contention that the retroactive application of
 
 Michelin
 
 has already been settled by the case law is grossly misplaced. To begin with, it is entirely clear that the United States Supreme Court has failed to rule on the question whether
 
 Michelin
 
 should be applied retroactively or prospectively, although the very issue was presented to the court on three separate occasions: on petition for rehearing in
 
 Michelin,
 
 raising the specific issue of retroactivity (rehg. den., Feb. 23, 1976, 424 U.S. 935 [47 L.Ed.2d 344, 96 S.Ct. 1151]); and on two petitions for writ of certiorari filed from state cases in which the Texas Supreme Court held that
 
 Michelin
 
 ought to be applied retroactively
 
 (City of Farmers Branch
 
 v.
 
 Matsushita Elec.
 
 (Tex. 1976) 537 S.W.2d 452 (cert. den., 429 U.S. 861 [50 L.Ed.2d 139, 97 S.Ct. 164];
 
 City of Farmers Branch
 
 v.
 
 American Honda Motor Co., Inc.
 
 (Tex. 1976) 537 S.W.2d 454 (cert. den., 429 U.S. 860 [50 L.Ed.2d 137, 17 S.Ct. 161])). It is, of course, well settled that a denial of a petition for a writ of certiorari is not an expression of opinion on the merits of the case
 
 (United States
 
 v.
 
 Carver
 
 (1923) 260 U.S. 482, 490 [67 L.Ed. 361, 364, 43 S.Ct. 181]). Furthermore, where the United States Supreme Court has not made a pronouncement regarding the retroactive application, the lower courts are free to decide the question for themselves
 
 (Lyons
 
 v.
 
 Westinghouse Electric Corporation
 
 (S.D.N.Y. 1964) 235 F.Supp. 526;
 
 Bush
 
 v.
 
 Wood Brothers Transfer, Inc.
 
 (S.D.Tex. 1975) 398 F.Supp. 1030). Respondent’s reliance on California cases
 
 (Sears, Roebuck & Co.
 
 v.
 
 County of Kings
 
 (1976) 59 Cal.App.3d 446 [130 Cal.Rptr. 694];
 
 Japan Food Corp.
 
 v.
 
 County of Sacramento
 
 (1976) 58 Cal.App.3d 891 [130 Cal.Rptr. 392];
 
 Michelin Tire Corp.
 
 v.
 
 County of San Mateo
 
 (1976) 57 Cal.App.3d 332 [127 Cal.Rptr. 791];
 
 Ralston Purina Co.
 
 v.
 
 County of Los Angeles, supra,
 
 56 Cal.App.3d 547) is likewise mistaken for at least two reasons. One, all the California cases cited by respondent were decided prior to the effective date of section 226 and are predicated on general principles of retroactivity rathér than the specific provisions of the statute and therefore are not controlling here. Two, none of the cited cases dealt with the concrete issue here presented, namely, the retroactive application of
 
 Michelin
 
 to escaped assessments. It bears special emphasis that in connection with the latter issue,
 
 Ralston Purina
 
 specifically pointed out that its decision was not determinative of escaped assessments, the subject matter of the instant suit.
 
 [6]
 

 
 *1007
 
 The assertion that the escaped assessment at bench should be upheld upon section 531.1,
 
 [7]
 
 calls also for summary disposition. The main issue in this case is whether
 
 Michelin
 
 shall be applied retroactively or prospectively, not the specific code section upon which the escaped assessments may be predicated. It is obvious that if
 
 Michelin
 
 is to be applied prospectively only—as we hold in the case at bench—there is no basis for levying escaped assessments on the theory of an “incorrectly” or “erroneously” allowed exemption.
 

 Finally, we briefly note that respondent’s reliance upon the California Constitution as the fountainhead of import duties is obviously unfounded. The import duties are proscribed by the federal Constitution, which provides in part that “No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspections Laws” (U.S. Const., art. I, § 10, cl. 2). The California Constitution takes into consideration the federal prohibition by providing in pertinent part that “
 
 Unless otherwise provided by
 
 this Constitution or
 
 the laws of the United States:
 
 (a) All property is taxable . . . .” (art. XIII, § 1; italics added). From the cited language, it clearly appears that the imposition of import duties ultimately rests on the federal law rather than the California Constitution, which subordinates its property tax provisions to those of the federal constitutional, statutory and decisional law.
 

 In view of our conclusion, it is unnecessary to decide whether respondent should be barred from the retroactive application of
 
 Michelin
 
 also on the theory of equitable estoppel (cf.
 
 City of Long Beach
 
 v.
 
 Mansell
 
 (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423];
 
 Advance Medical Diagnostic Laboratories
 
 v.
 
 County of Los Angeles
 
 (1976) 58 Cal.App.3d 263 [129 Cal.Rptr. 723]) with special regard to the fact that
 
 *1008
 
 appellant detrimentally relied upon the
 
 county's
 
 representation of the
 
 tax
 
 immunity of the disputed items.
 

 The judgment is reversed.
 

 Taylor, P. J., and Rouse, J., concurred.
 

 A petition for a rehearing was denied December 9, 1977, and respondent’s petition for a hearing by the Supreme Court was denied January 19, 1978. Mosk, J., was of the opinion that the petition should be granted.
 

 [1]
 

 Although the notice of appeal refers to the “order granting defendants’ Motion for Summary Judgment,” a nonappealable interlocutory order (Code Civ. Proc., § 904.1; 6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4074-4075), the record shows that judgment dismissing the action was filed on September 23, 1976. Accordingly, we treat the notice of appeal as pertaining thereto.
 

 [2]
 

 Unless otherwise indicated, all references will be made to the California Revenue and Taxation Code.
 

 [3]
 

 The legislative findings set out in Statutes 1976, chapter 335, section 1, read as follows: “The Legislature finds and declares that in
 
 Low
 
 v.
 
 Austin
 
 (1872), 20 L.Ed. 517, the Supreme Court of the United States held, in effect, that imported goods were not subject to property taxation under the import-export clause contained in Section 10 of Article I of the Constitution of the United States. This general rule, modified by various court decisions remained continuously in effect until January 14, 1976, when the Supreme Court of the United States in
 
 Michelin Tire Corporation
 
 v.
 
 Wages
 
 (1976), 46 L.Ed.2d 495, overruled the Low case.
 
 “The Legislature finds that it would he manifestly unfair and would cause severe economic hardship, inequities, and injustices to apply the Michelin case retroactively.
 
 Therefore, it is the purpose of this act to exempt under Section 2 of Article XIII of the Constitution of the State of California all personal property formerly exempt under the doctrine of
 
 Low
 
 v.
 
 Austin
 
 and subsequent interpretations for any assessment year prior to the 1976-77 assessment year.
 
 “Importers relied upon statutory and case law which was in effect prior to the decision in Michelin v. Wages in the general conduct of their business, and could not reasonably foresee the application of the new rule of law
 
 under Michelin v. Wages.
 
 The decision
 
 in Michelin v. Wages (1976), 46 L.Ed.2d 495,
 
 will cause many importers to become insolvent, relocate, or go out of business. This will seriously and adversely affect California businesses related to,
 
 or associated with,
 
 the importing community, and will result in a further deterioration of the labor market in California. Public policy will be served by preventing the disruptive and unjust effect of applying Michelin v. Wages to tax years prior to 1976-77."
 
 (Italics added.)
 

 [4]
 

 The stipulated facts of the instant case indicate that on March 1, 1972, the tax lien date, all of the goods of appellant were: “A. Imported goods: B. Held for resale by the plaintiff in the ordinary course of its business; C. Not to be used by plaintiff in the course of any manufacturing, assembling, or processing procedure; D. Not pledged or hypothecated subsequent to importation; E.
 
 Such goods were in their original box, carton, package
 
 or form and unopened on tax lien date,” and also that “For the tax year in question, the plaintiff filed a Business Property Statement listing all of the goods in question and filed a Claim for Immunity for Imported Goods. The
 
 return and claim were reviewed bv the
 
 Santa Clara County
 
 Assessor, and immunity on the imported goods
 
 was
 
 granted oñ
 
 goods having a market value of approximately $13,320.00.” (Italics added.)
 

 [5]
 

 California Constitution, article XVI. section 6. provides in pertinent part that “The Legislature shall have no power ... to make any gift or authorize the making of any gift, or any public money or thing of value to any individual, municipal or other corporation whatever; ...”
 

 [6]
 

 With
 
 regard to the retroactivity of escaped
 
 assessment, the court stated as follows: “We need not decide whether retrospective application of
 
 Michelin
 
 includes escape
 
 *1007
 
 assessments pursuant to the provision of section 531 et seq. of the Revenue and Taxation Code upon importers whose property has not been assessed. No such assessment is needed in respect of plaintiff. If such assessments should at some point be denied upon the ground that such retrospective application of
 
 Michelin
 
 would be inequitable, no unconstitutional discrimination against plaintiff would be involved. The existence of such inequity would in itself be a valid classification.”
 
 (Ralston Purina Co.
 
 v.
 
 County of Los Angeles, supra,
 
 at p. 561, fn. 4.)
 

 [7]
 

 Section 531.1 provides in pertinent part that “If an exemption or any portion of exemption has been
 
 incorrectly
 
 allowed, an escape assessment in the amount of the exemption, or that portion of the exemption that has been
 
 erroneously
 
 allowed, with interest as provided in Section 506. shall be made; ...” (Italics added.)